Renovo Hospital Association, t/a Bucktail Medical Center, Petitioner v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued January 30, 1984, before Judges WILLIAMS, JR., BARRY and PALLADINO, sitting as a panel of three.

356

*Jack M. Mumford,* with him, *Roland Morris, Duane, Morris & Heckscher,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, for respondent.

OPINION BY JUDGE BARRY, June 26, 1984:

This appeal arises from an order by the Secretary of the Department of Public Welfare (Secretary) which reversed an order of the Office of Hearings and Appeals. A thorough perusal of the record reveals a complex mixture of facts, events and appeal provisions under the Pennsylvania Code.

The petitioner, Renovo Hospital Association t/a Bucktail Medical Center (Bucktail), is licensed by the Pennsylvania Department of Health as a certified provider of medical services under the Pennsylvania Medical Assistance Program (PMAP). PMAP provides payment for medical services rendered by certified health care providers to persons unable to afford them. The Department of Public Welfare (DPW) funds institutional providers, such as Bucktail, through a two-step process. Providers receive an interim per diem rate for each inpatient day of care rendered by the provider. The interim per diem

rate reflects the audited per diem costs to care for medical assistance patients in the *prior* fiscal year.

When the fiscal year concludes, institutional providers must submit a report which indicates the cost to care for medical assistance patients. The report is audited and reconciled with the interim payments made during the fiscal year. The audit and reconciliation thus consist of the interim settlement and final settlement.

The program covers two levels of nursing services —intermediate and skilled. A free-standing nursing facility, an intermediate level facility, receives a reimbursement rate from the program less than the rate received by a hospital-based nursing facility (HBNF), a skilled facility. Bucktail received rates consistent with a free-standing nursing facility. At various times, Bucktail requested *classification* as an HBNF in order to receive the increased reimbursement rates. These requests constitute the heart of this appeal.

On March 5, 1980, March 6, 1980, and May 27, 1980, Bucktail requested HBNF status under the exception criteria in 55 Pa. Code §9424.6(b), Skilled Nursing Facility Participation Requirements.[1] The

---

[1] Section 9424.6(b) of Title 55, provides:

Nursing facilities desiring to participate in the Skilled Nursing Facility Care and Services Program under Title XIX, Medical Assistance, must meet the following requirements:

1. *State Licensure or Approval*

a. A proprietary, non-proprietary, or hospital-based skilled nursing facility must be licensed or approved by the Department of Health. A skilled nursing facility certified for Title XVIII is automatically eligible to participate in the Medical Assistance Program.

b. A hospital-based skilled nursing facility is a distinct part unit that is located physically within or on the im-

request was made for the fiscal year July 31, 1979, to June 30, 1980. By letter dated August 15, 1980, the Director of the Bureau of Reimbursement Methods of DPW denied the request because Bucktail did not satisfy the exception criteria to qualify as an HBNF. On August 28, 1980, Bucktail appealed this decision which was docketed as No. 23-81-25 (HBNF denial appeal).

On October 9, 1980, Bucktail requested a reconsideration of its status. On October 26, 1980, the Director denied this request. On November 26, 1980, Bucktail appealed this decision, docketed No. 23-81-75 (HBNF reconsideration denial).

On February 26, 1981, Bucktail received its Tentative Interim Rate Settlement from DPW which advised Bucktail of an overpayment by PMAP. The Comptroller of DPW informed Bucktail that it had

---

mediate grounds of a general hospital that is licensed or approved by the Department of Health and meets all of the requirements of Section 101.31 of the State's hospital regulations. Also, the distinct part facility shares support services and administrative costs of the hospital. The hospital services shall be available to the general public. For the purpose of reimbursement under the Medical Assistance Program, a distinct part unit may not exceed 50% of the facility's total licensed or approved bed complement for acute hospital care.

An exception to the 50% bed limit will be made by the Department if the hospital meets all of the following criteria: (1) beds operated in excess of the 50% limit have been approved by the Health Services Agency or local health planning agency; (2) the facility is located in an area underserved or lacking long term care beds under an approved local health plan; (3) the facility is in an area designated by the Department of Health, Education and Welfare as being underserved and lacking adequate medical facilities; and (4) the facility's licensed long term care beds are occupied by more than 50% Medical Assistance patients.

thirty days to appeal the interim rate settlement pursuant to 71 P.S. §1710.41.[2] On March 24, 1981, Bucktail appealed the interim rate, docketed No. 23-81-85 (interim rate appeal).

On July 13, 1981, Bucktail received a Final Settlement which indicated that Bucktail had received an overpayment. Bucktail was informed again by the comptroller that it had thirty days to appeal the settlement under 71 P.S. §1710.41. On July 31, 1981, Bucktail appealed this decision, which was docketed No. 23-81-189 (final rate appeal).

The HBNF denial appeal, HBNF reconsideration denial and the interim rate appeal were consolidated by the Director of the Office of Hearings and Appeals (Director). On August 31, 1981, the Director also consolidated the final rate appeal subject to any objection by the parties.[3] DPW moved for dismissal of the appeal on the grounds that the appeal was untimely since 1 Pa. Code §35.20 requires an appeal within ten days of notice. On December 16, 1981, the Director denied the motion to dismiss because 55 Pa. Code §1181.101 superseded 1 Pa. Code §35.20, and permitted Bucktail thirty days to appeal.

DPW appealed the order, but a final order issued by the Secretary affirmed the Director's decision refusing to dismiss the appeal. This decision permitted Bucktail to proceed before the Office of Hearings and Appeals regarding the reimbursement classification as an HBNF. However, on January 13, 1982, pursuant to a request for reconsideration filed by DPW, the Secretary reversed the Director without an

---

[2] This provision was repealed on June 27, 1978, and is not applicable in the present case.

[3] Indeed, Bucktail did object to the consolidation of No. 23-81-189 with the other appeals because it preferred the appeals to remain separate.

opinion. On January 20, 1982, the Director informed the parties that the final rate appeal, which had been omitted from the Secretary's order to reverse would be included in the Secretary's order. Bucktail petitioned for review of this decision on February 10, 1982.

On October 14, 1982, prior to oral argument of the appeals, the parties entered a joint stipulation before this Court. We remanded the final rate appeal, in part, for further proceedings before the Director regarding certain audit finding issues for the fiscal year ending June 30, 1980.[4] The joint stipulation did not address, however, the final reimbursement rate received by Bucktail. Rather, the timeliness of the final rate appeal, along with the same issue raised in the HBNF denial appeal, HBNF reconsideration denial and interim rate appeal, remained subject to this appeal.

The seminal issue here is what is the time period to appeal the denial of HBNF status, and the interim and final reimbursement rates. Chaotic facts and appeal provisions cloud the disposition of the issues. It is necessary, therefore, to properly *characterize* each appeal by Bucktail in order to apply the appropriate appeal provisions. We first consider the HBNF denial appeal and HBNF reconsideration denial. These appeals involved the *denial* of Bucktail's request to be *classified* as an HBNF.

Bucktail contends that it had thirty days to appeal the denial of HBNF status by DPW under 55 Pa. Code §1181.101, which provides:

---

[4] On July 6, 1981, Bucktail received an audit report which notified Bucktail that its cost report for July 31, 1979, to June 30, 1980, had been audited by the Division of Nursing Home Audits. The audit report is not part of this appeal because it was remanded as part of the joint stipulation.

(a) All nursing facilities have a right to appeal and have a hearing if dissatisfied with the Department's decision regarding:

(1) the interim *per diem* rate established by the Department;

(2) the findings of the auditors in the annual audit report;

(3) the determination by the comptroller of the difference between the allowable costs certified by the auditors in the annual audit report, and the total allowance amount as shown on the interim billing; and

(4) the denial or nonrenewal of a provider agreement.

. . . .

(c) Each appeal must be taken within 30 days of the date that the facility is notified of any of the decisions listed in subsection (a) of this section. Those findings contained in a facility's audit report which are not appealed by the facility within the 30-day limit shall not be considered as part of any subsequent appeal proceeding.

Bucktail argues 55 Pa. Code §1181.101 is inconsistent with and, therefore, supersedes the General Rules of Administrative Practice and Procedure under 1 Pa. Code §35.20 which provides:

Appeals from actions of the staff.

Actions taken by a subordinate officer pursuant to authority delegated by the agency head may be appealed to the agency head by filing a petition within ten days after service of the notice of such action.

Bucktail maintains, moreover, that 1 Pa. Code §35.20 does not provide a mandatory appeal right which is exclusive where DPW has published regulations which allow a longer period to appeal.

We do not agree that Bucktail had thirty days to appeal HBNF denial appeal or HBNF reconsideration denial. It had applied for HBNF status under 55 Pa. Code §9424.6(b), but failed to meet the exception criteria to obtain HBNF status. The Director denied Bucktail HBNF status by virtue of the authority delegated to him by DPW. Under Section 9424.6(b), which provides no specific appeal period, a facility which desires recognition as an HBNF under the exception criteria should submit a written request to the Bureau of Reimbursement Methods. Since the request must be sent to the Bureau of Reimbursement Methods, we believe it has the delegated authority from DPW to determine whether a facility satisfies the exception criteria. In our view, therefore, Section 35.20 applies and Bucktail had ten days to appeal the denial of HBNF status. Examination of the record reveals Bucktail appealed the HBNF denial appeal thirteen days after notification and the HBNF reconsideration denial thirty-one days after notification of the denial of HBNF status. These appeals thus were not timely filed and, therefore, should have been dismissed. Furthermore, Section 1181.101 governs provider appeals of reimbursement rates and not the denial of HBNF status and thus does not apply to these appeals.

Bucktail argues that *Delaware Valley Convalescent Center, Inc. v. Beal*, 488 Pa. 292, 412 A.2d 514 (1980) supports its proposition because similar provisions permit thirty days to appeal control reimbursement disputes between providers and DPW. *Delaware Valley* does indicate that DPW regulations indeed provide nursing facilities aggrieved by reimbursement rates set by DPW thirty days to appeal interim per diem rates or annual adjustments. However, Bucktail's appeals address the *denial* of HBNF *status*

and *not reimbursement rates* and, therefore, the appeal period for denial of HBNF status must apply.

Bucktail suggests, as does the Director, that the refusal to reclassify Bucktail as an HBNF is a decision regarding the reimbursement rates of the facility. Quite obviously, the classification of a facility affects the reimbursement rate it receives. But a facility must first attain a particular status in order to be eligible for higher reimbursement rates. Attainment of a particular status and eligibility for reimbursement rates involve separate requests and, therefore, have separate corresponding appeal provisions. We cannot agree that the denial of HBNF status is a denial of higher reimbursement rates; therefore, we cannot permit Bucktail to camouflage its appeals to take advantage of a longer, more desirable appeal period.

Bucktail next contends it had thirty days to appeal the tentative interim settlement and final settlement rates under 55 Pa. Code §1181.101. Bucktail argues that it had been an HBNF entitled to a rate settlement reimbursement commensurate with HBNF status since July 31, 1979. It also argues that DPW is estopped from denying the petitioner the thirty day provision because it relied on the comptroller who informed Bucktail, by letter, that it had thirty days to appeal.

Appeals Nos. 23-81-85 and 23-81-189 contested the interim and final reimbursement rates respectively. Section 1181.101 became effective on July 25, 1981, six days before Bucktail appealed the final reimbursement rate. Until then, Section VII of the Annex to 55 Pa. Code §9424 governed appeals to interim reimbursement rates. In either case, Bucktail had thirty days to appeal the interim or final reimbursement rates. Section VII of the Annex to 9424 provides:

Facilities may appeal from:

1. The method of establishment of an interim per diem rate;

. . . .

3. The method of determination . . . of the difference between the allowable costs . . . in the annual audit report, and the total allowance amount as shown on the interim billing.

Each such appeal must be taken within 30 days of the date of the letter of notification from the Department.

Clearly, either section entitles Bucktail to a thirty day appeal period for interim or final reimbursement rates.

DPW contends No. 23-81-85, regarding interim reimbursement settlement rates, was moot in light of Bucktail's appeal of the final reimbursement settlement rates at No. 23-81-189. We do not agree because those appeals were independent of one another and timely made and, therefore, should be heard by DPW, in accordance with the provisions of 55 Pa. Code §1181.101. DPW also argues that the Board of Claims had jurisdiction over disputes concerning tentative interim settlements. *AID Health Care Centers, Inc. v. O'Bannon* (No. 1453 C.D. 1980, filed December 8, 1980). *AID Health Care Centers, Inc.* does not stand for this proposition but rather holds that a party must first exhaust available administrative remedies before it initiates an appeal with this Court. Bucktail has, in fact, pursued the proper remedial course and has arrived here appropriately.

DPW maintains that the Secretary's January 13, 1981, order foreclosed collateral attack in the final rate appeal of the Director's denial of an HBNF exception to Bucktail. DPW argues that Bucktail has failed to exhaust available and adequate administra-

tive remedies and, therefore, cannot urge that HBNF status be granted as part of another appeal. DPW correctly expresses a legal principle but it is not applicable here because No. 23-81-189 addresses final settlement rates and not the denial of HBNF status.

Finally, DPW argues that this Court lacks jurisdiction to review the final rate appeal. It contends that, in accordance with the Joint Stipulation of Remand in Part filed in this Court on October 14, 1982, the appeal of the audit *and* final settlement has been remanded for a hearing on the merits and that Bucktail's administrative remedies should be exhausted before appeal to this Court. We do not agree with this contention. The parties agreed to remand the challenge to the audit issue for the fiscal year ending June 30, 1980.[5] It did not remand, however, the final

---

[5] IN THE COMMONWEALTH COURT OF PENNSYLVANIA

RENOVO HOSPITAL ASSOCIATION : COMMONWEALTH
t/a BUCKTAIL MEDICAL CENTER, : DOCKET
                              :
           Petitioner, :
                              :
              v.           : No. 304, 1982
                              :
COMMONWEALTH OF        :
PENNSYLVANIA, DEPARTMENT  :
OF PUBLIC WELFARE,       :
                              :
           Respondent :

JOINT STIPULATION OF REMAND IN PART

The parties, having resolved their dispute in part, hereby inform this Honorable Court that:

1. This Petition involves appeals from consolidated administrative proceedings before the Department of Public Welfare (DPW) Office of Hearings and Appeals at File Nos. 23-81-25, 23-81-75, 23-81-85, and 23-81-189 (the last at times mistyped in the Petition for Review as 23-81-198) below.

reimburgement settlement rate issue. Rather No.
23-81-189, which addressed the appeal of the final

2. These matters were dismissed as untimely below pursuant to Secretary O'Bannon's January 13, 1982 Order and DPW Hearing Examiner Roth's letter dated January 20, 1982. *See,* Exhibits A and B to the Petition for Review.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENOVO HOSPITAL ASSOCIATION, t/a BUCKTAIL MEDICAL CENTER, | : | COMMONWEALTH DOCKET |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 304, 1982 |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, | : | |
| | : | |
| | : | |
| Respondent | : | |

ORDER

AND NOW, this 14th day of October, 1982, the Court, having received and reviewed the parties' Joint Stipulation of Remand in Part for the above-captioned case, does hereby order and decree that:

1. File No. 23-81-189 shall be remanded for further proceedings before the Department of Public Welfare (DPW) Office of Hearings and Appeals insofar as it challenges certain audit finding issues for the fiscal year ending June 30, 1980 other than the denial of reimbursement status as a hospital-based nursing facility.

2. There being Order(s) entered for *inter alia* File No. 23-81-189 which allegedly precludes the Petitioner from pursuing administrative review of determinations by DPW's Bureau of Reimbursement Methods and auditors to deny it reimbursement as a hospital-based nursing facility for the fiscal year ending June 30, 1980 and there being no agreement between the parties as to this issue, this issue at File No. 23-81-189 shall remain subject to appeal under the above captioned Petition for Review along with the similar issue(s) raised thereunder as to File Nos. 23-81-25, 23-81-75, and 23-81-85.

/s/ Paul S. Lehman, J.

reimbursement rate, remained subject to appeal under Bucktail's petition for review.

Because of our decision regarding the interim rate appeal and the final rate appeal, we need not address Bucktail's estoppel argument.

For the foregoing reasons, we affirm the Secretary's order regarding Nos. 23-81-25, HBNF denial status, and 23-81-75, HBNF reconsideration denial; we reverse and remand the Secretary's order regarding Nos. 23-81-85, the interim rate appeal and 23-81-189, the final rate appeal, which were timely filed and are limited to appeal of interim and final reimbursement rates respectively.

ORDER

Now, June 26, 1984, the order of the Secretary of the Department of Public Welfare, dated January 13, 1982, is affirmed as to Nos. 23-81-25 and 23-81-75. The order is reversed and remanded for consideration not inconsistent with this opinion as to Nos. 23-81-85 and 23-81-189.

Jurisdiction relinquished.