Commonwealth of Pennsylvania, Department of Public Welfare, Petitioner *v.* Leonard H. Shapiro, M.D., Respondent.

Argued May 10, 1985, before Judges MACPHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Bruce G. Baron,* Assistant Counsel, for petitioner.

*Richard C. Senker,* for respondent.

OPINION BY JUDGE MACPHAIL, August 9, 1985:

The Department of Public Welfare (DPW) appeals from a decision of the Board of Claims (Board) awarding Dr. Leonard H. Shapiro (Claimant) $2,-000.00 together with interest at 6% per annum beginning June 2, 1980. We reverse the order of the Board of Claims.

Claimant was a provider in the Pennsylvania Medical Assistance Program (Program) who performed therapeutic abortions for persons who were eligible for Program benefits during the years 1972 through 1975. On or about January 16, 1979, Claimant notified DPW that he had submitted invoices to DPW for 241 patients who had received therapeutic abortions and for which he had not been paid. On March 14, 1980, Claimant was advised that DPW would honor invoices submitted for abortion services performed October 9, 1973 through June 20, 1977 and that invoices for abortions performed prior to October 9, 1973 would be denied. On March 24, 1980, Claimant's counsel requested a DPW decision on 65 claims allegedly submitted to DPW for abortions performed within the prescribed time frame. DPW re-

sponded on June 2, 1980 by advising Claimant that it would honor some of the claims but that reimbursement for 40 cases listed by name and Program number were denied because DPW had no record of any claim having been submitted by Claimant for those cases. Claimant's counsel sent a letter to DPW on July 21, 1980 stating that DPW's refusal to pay for the services rendered was illegal. DPW never responded to that letter.

On January 12, 1981, Claimant filed a statement of claim with the Board demanding, *inter alia,* payment for 62 unpaid invoices. DPW filed preliminary objections which were sustained in part and overruled in part. The Board, in disposing of the preliminary objections, held that the DPW letters of March 14 and June 2, 1980 advised Claimant of the status of each of the cases about which Claimant was concerned. The Board went on to hold that all of Claimant's claims except the 40 cases which DPW said were not billed to DPW, were time barred by virtue of the provisions of Section 6 of the Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. §4651-6, which states that the Board has no jurisdiction over a claim filed more than six months after it accrues.

As to the remaining 40 cases, however, the Board held that ''DPW's inability to locate records does not necessarily mean that those records do not exist and, therefore, the plaintiff is not barred from presenting claims for services performed because records cannot be located.''

DPW then filed an answer to the statement of claim containing new matter which set forth, *inter alia,* that Claimant's failure to appeal from the determinations made by DPW on March 14 and June 2, 1980 disallowing the Claimant's claims, was a bar to the suit before the Board. No reply was filed to the new matter.

After a hearing, the Board decided that Claimant had performed the services in the 40 cases for which he demanded payment and that DPW had never advised that such claims would not be paid; therefore, the six month statute of limitations would not apply.

In its appeal to us, DPW sets forth five (5) issues for our determination: (1) whether DPW has exclusive or original jurisdiction over claims for payment by a provider, (2) whether the claim should have been denied because Claimant failed to exhaust his administrative remedies, (3) whether there was substantial evidence to show that DPW had been billed for the services, (4) whether the Board erred in holding that DPW had not denied Claimant's claims by its letters of March 14 and June 2, 1980 and (5) whether the Board erred when it did not deem admitted DPW's averments in its new matter by reason of Claimant's failure to deny them.[1]

DPW states that we are directly confronted here for the first time with the issue of whether DPW has exclusive jurisdiction to adjudicate a dispute between a provider and DPW over payment of invoices submitted under the Program. DPW argues that it has exclusive jurisdiction over such matters because the provider's right to reimbursement arises not from any contract between the provider and DPW but rather is determined by laws and regulations governing the administration of the Program. In support of its decision, DPW cites *Barsky v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 417, 464 A.2d 590 (1983), *aff'd,* 504 Pa. 508, 475 A.2d 742

---

[1] By prior order, we barred Claimant from submitting a brief in the matter now before us when it was determined that his brief was due in April of 1984 and no brief had been filed by February 26, 1985. *See* Pa. R.A.P. 2188. Our order did not bar Claimant from presenting oral argument; nevertheless, no argument was presented by Claimant or by counsel on his behalf.

(1984), wherein we held that DPW is the fact finder with the expertise to determine whether or not a provider had violated the terms of his agreement with DPW. For reasons which follow, we do not believe *Barsky* controls.

In *Smock v. Department of Public Welfare,* 57 Pa. Commonwealth Ct. 67, 425 A.2d 883 (1981), *aff'd,* 496 Pa. 204, 436 A.2d 615 (1981), DPW had revoked Smock's nursing home license and refused to reinstate it. Smock filed an action in this Court's original jurisdiction for money damages and restitution. DPW filed preliminary objections asserting that Smock's suit should be before the Board.[2] We agreed.

We see no difference between *Smock* and the case now before us. The same laws and regulations governing the administration of the Program which applied to the revocation of a nursing home license in *Smock* would apply to Claimant's agreement with DPW to perform therapeutic abortions at a charge of $50.00 for each abortion.

Our analysis of this case leads us to the conclusion that when it sent its letters of March 14 and June 2, 1980, DPW thereby decided the only issue to be determined which was whether Claimant met the conditions for payment for the 40 therapeutic abortions for which DPW had no invoices. DPW does not dispute that Claimant performed the services. Its denial of payment is based solely on the fact that it did not receive invoices. DPW contended before the Board and contends here that it does not owe Claimant the money he claims is due. This, therefore, is not a matter of determining eligibility for benefits or wheth-

[2] The Board, of course, has exclusive jurisdiction to hear and determine contract claims against the Commonwealth in excess of $300.00. Section 4 of the Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. §4651-4.

er and to what extent a provider may have breached the terms of a provider agreement as in *Barsky; this* is purely and simply a contractual matter. We think it was proper for the Board to decide whether or not DPW owed Claimant for the 40 cases for which DPW said there were no invoices. We will not set aside the Board's order for lack of jurisdiction on that ground.

In view of our holding on that aspect of the Board's jurisdiction, we deem it unnecessary to discuss DPW's argument that Claimant has failed to exhaust his administrative remedies.[3]

We now turn to the other aspect of DPW's attack upon the Board's jurisdiction. As we have noted, unless claims are filed within six (6) months of the date they accrue, the Board is statutorily barred from exercising jurisdiction.

> We have consistently held that for the purposes of Section 6 the jurisdictional period begins to run at the time that the cause of action accrues and that the cause of action accrues when the injured party is *first able to litigate the claim.* A party is first able to litigate a claim when he or she knows the amount due under the claim.

*Department of Public Welfare v. Federated Security Inc.,* 49 Pa. Commonwealth Ct. 411, 417, 411 A.2d 284, 288 (1980) (emphasis in original, citations omitted).

In determining when the cause of action accrued in the instant case, we note that paragraph 7 of the Claimant's statement of claim indicates that he was well aware of the amount he claimed to be due on or

---

[3] It is true that both our Court and the Supreme Court in *Smock* did note that the provider's failure to exhaust his administrative remedies would bar his claim before the Board. We believe, however, that the clear holding of both Courts was that jurisdiction lay with the Board.

about January 16, 1979 on which date his attorney sent a letter to DPW setting forth his claim. Paragraph 5 of the statement of claim states that Claimant made a claim for payment from DPW shortly after each therapeutic abortion was performed between 1972 and 1975. At the very latest, Claimant's claim for the 40 items in dispute accrued when DPW informed him in its letter of June 2, 1980, that it was denying those claims. At that time, if not before, Claimant was charged with knowledge that he would have to sue if he was to recover. Inasmuch as Claimant's statement of claim was filed beyond the six (6) month statute of limitations, we are compelled to hold that the Board was without jurisdiction to adjudicate the merits of the claim.

### ORDER

The order of the Board of Claims, dated June 15, 1983, awarding Dr. Leonard H. Shapiro the sum of $2,000.00 together with interest at 6% per annum from June 2, 1980, is hereby reversed.