516 A.2d 82

Commonwealth of Pennsylvania, Department of Public Welfare, Petitioner *v.* Divine Providence Hospital, Respondent.

Argued May 12, 1986, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Bruce G. Baron,* Assistant Counsel, for petitioner.

*Richard A. Vanderlin,* with him, *O. William Vanderlin, McNerney, Page, Vanderlin & Hall,* for respondent.

OPINION BY JUDGE DOYLE, October 10, 1986:

This is an appeal by the Department of Public Welfare (DPW) from an order of the Board of Claims (Board) awarding Divine Providence Hospital (Provider) $3,448.84 plus six percent interest beginning on August 1, 1980.

This matter began when Provider was sent, on July 14, 1981, its final settlement and cost report for the year ending June 30, 1980. Provider appealed this report to DPW on September 4, 1981, but the appeal was untimely and hence DPW's Office of Hearings and Appeals dismissed the appeal on March 8, 1982. The Secretary of the Department of Public Welfare denied reconsideration on May 10, 1982. The matter was appealed to this court and we affirmed on August 5, 1983. *Divine Providence Hospital v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 188, 463 A.2d 118 (1983). The basis on which the appeal before DPW was sought was that "the state auditor erroneously represented to the facility that per diem reimbursement for depreciation and interest was included in the net operating costs reimbursement to [Provider] and that the applicable regulation did not permit separate reimbursement for depreciation and interest expenses."

On December 9, 1981, after Provider filed its appeal with DPW, but before the appeal was dismissed as

untimely, Provider also filed a claim before the Board alleging that DPW had breached its provider agreement (alleged to be a binding contract) by not reimbursing Provider in accordance with DPW regulations as mandated by the agreement. The Board stayed the matter pending final action by DPW. The Board then lifted the stay on July 8, 1982, but prior to this determination however, the Board overruled DPW's preliminary objections asserting lack of jurisdiction and ripeness and also denied DPW's request to permit an interlocutory appeal.

After the stay was lifted, DPW filed its answer and new matter. On September 7, 1982 DPW's motion for judgment on the pleadings was denied. After this Court affirmed DPW's dismissal of the appeal pending before it in August of 1983, see *Divine Providence Hospital,* DPW moved for summary judgment before the Board asserting that the claim constituted an impermissible collateral attack on a final order. The Board denied the motion. A hearing on the merits was held on October 31, 1984. On August 15, 1985 the order, which is the subject of this appeal, was entered.

In its appeal to this Court DPW has raised numerous arguments which can be categorized briefly as (1) an attack on the subject matter jurisdiction of the Board (2) an assertion that the Board proceedings constituted an impermissible collateral attack and (3) an assertion that the Board's decision on the merits is unsupported by the evidence and is contrary to law. We will examine these contentions keeping in mind that our review of a Board order is limited to determining whether the order is in accordance with law and whether the findings of fact are supported by the evidence. *Department of Transportation v. Mosites Construction Co.,* 90 Pa. Commonwealth Ct. 33, 494 A.2d 41 (1985).

## SUBJECT MATTER JURISDICTION

DPW strenuously argues that subject matter jurisdiction over provider appeals is with the DPW Office of Hearings and Appeals, not the Board. We have already decided, however, that a cause of action in contract as asserted by an alleged breach of a provider agreement is, in certain instances, properly brought before the Board. In *Department of Public Welfare v. Shapiro,* 91 Pa. Commonwealth Ct. 64, 496 A.2d 887 (1985), DPW denied payment to a provider alleging that it (DPW) had never received invoices. We distinguished *Shapiro* from cases where DPW would have jurisdiction because of its expertise. Such cases include those where the issues involve a determination of eligibility for benefits or a determination of whether and to what extent a provider may have breached the terms of a provider agreement. *Shapiro.* We reasoned in *Shapiro* that where the only question was whether DPW had received the invoices the matter was purely and simply contractual and hence within the Board's jurisdiction. As in *Shapiro,* this case does not involve a question of eligibility or provider breach, but concerns the question of whether DPW breached the provider agreement by not following its own regulations.

DPW asserts that its jurisdiction in matters such as the instant one is mandatory and exclusive. Section 1396(a) of 42 U.S.C., which deals with grants to states for medical assistance programs, provides that:

A State plan for medical assistance must . . .

(5) . . . provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan. . . .

In addition, 42 C.F.R. §431.10(e) states that in order for an agency to qualify as the Medicaid agency:

(1) The agency must not delegate, to other than its own officials, authority to—

(i) Exercise administrative discretion in the administration or supervision of the plan, or

(ii) Issue policies, rules, and regulations on program matters.

(2) The authority of the agency must not be impaired if any of its rules, regulations, or decisions are subject to review, clearance, or similar action by other offices or agencies of the State.

(3) If other State or local agencies or offices perform services for the Medicaid agency, they must not have the authority to change or disapprove any administrative decision of that agency, or otherwise substitute their judgment for that of the Medicaid agency with respect to the application of policies, rules and regulations issued by the Medicaid agency.

This statute and regulation, however, restrict only the *administration* of the plan to DPW. DPW also relies upon 42 C.F.R. §447.258 which provides:

**Provider appeals of State rate determinations**

The agency must provide an appeals procedure that allows individual providers an opportunity to submit additional evidence and request prompt administrative review of payment rates.

Pursuant to this regulation, DPW has established the appeals procedure appearing at 55 Pa. Code §1181.101. But while regulation 447.258 specifically mandates that DPW establish an appeals procedure for provider claims, it does not prohibit a separate cause of action for breach of contract under state law.

Next, DPW argues that because State statutes and one of its regulations[1] indicate that a provider must ac-

---

[1] DPW cites 55 Pa. Code §1101.63; Section 444.1 of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §444.1, which was added by Section 5 of the Act of July 31, 1968, P.L. 904; and Section 1406(a) of the Code, 62 P.S.

cept DPW payments as payments in full, only DPW can adjudicate provider claims and vesting such power in the Board would be inconsistent with the power vested in DPW. The fallacy in this argument is that the Board is not adjudicating the payment rates; it is merely deciding whether DPW's action, here its method of determining whether the payments were due, constituted a breach of the provider agreement.

DPW next argues that holding that the Board has jurisdiction would result in a constitutional violation because it would permit the Board, rather than this Court, to review DPW determinations "which effectively are appeals from DPW." DPW Brief at 21. But DPW would *not* be adjudicating whether a contract was breached and it would not be an appeal from a DPW *adjudication* before the Board.

DPW also relies upon case law to support its contention that its jurisdiction over provider appeals is mandatory and exclusive. While it is true that in *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480 (1980), DPW adjudicated a provider claim, the issue which the Pennsylvania Supreme Court reviewed was "whether, under Medical Assistance regulations and the accompanying statutes, private independent physician groups which contract with hospitals to provide emergency room physician coverage are entitled to Medicaid reimbursement for services rendered to Medical Assistance patients while on emergency room duty, even though these hospitals receive Medicaid reimbursement for all emergency room services, including physician coverage." *Id.* at 79, 422 A.2d at 481. Thus, the authority of DPW to adjudicate provider claims was never called into question in

---

§1406(a) which was added by Section 3 of the Act of July 10, 1980, P.L. 493.

*Forbes,* nor was the question of whether such claims might be subject to suit under a breach of contract theory before the Board even suggested. Similarly, *Temple University—of the Commonwealth System of Higher Education v. Auditor General,* 44 Pa. Commonwealth Ct. 283, 403 A.2d 1048 (1979), appealed again after remand at 83 Pa. Commonwealth Ct. 516, 480 A.2d 1267 (1984), did not involve the question of whether the Board of Claims could have jurisdiction over contractual disputes arising from provider agreements. In *Temple* the University presented its cost reports to the Auditor General. The Auditor General determined that only certain of the costs were reimbursable and so advised DPW which then paid the University in accordance with the Auditor General's certified statement. The University appealed to our Court both the Auditor General's certified statement and the DPW's determination to pay. Both DPW and the Auditor General filed motions to quash disclaiming responsibility for the determination of the amount of the reimbursement. We held that it was DPW's determination which was an adjudication properly subject to our review, remanded the case to DPW and granted the Auditor General's motion to quash. We held that the burden to determine whether the amount of reimbursement the University sought was proper under DPW regulations was with DPW and hence that DPW was the proper respondent. But, as in *Forbes, Temple* does not dispose of the question of whether the Board has jurisdiction over a breach of contract where violation of a provider agreement is asserted. DPW also relies upon *Renovo Hospital Association v. Department of Public Welfare,* 83 Pa. Commonwealth Ct. 355, 480 A.2d 1260 (1984). We simply stated in *Renovo* that in taking an appeal to DPW from a denial of reimbursement the provider "pursued the proper remedial course." We never expressly stated that an ap-

peal to the Board would have been in error. We thus reject as precedential the authority cited by DPW, and find *Shapiro* to be controlling in the instant case. Accordingly, we hold that the Board had subject matter jurisdiction.

## COLLATERAL ESTOPPEL

DPW next challenges that the proceedings before the Board constituted a collateral attack on DPW's adjudication. The doctrine of collateral estoppel is not properly applied to this case. In *McCarthy v. Township of McCandless*, 7 Pa. Commonwealth Ct. 611, 300 A.2d 815 (1973), Judge MENCER set forth a scholarly analysis of collateral estoppel. He noted that the doctrine generally provides that "[w]here a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. . . ." *Id.* at 619, 300 A.2d at 820 (quoting §68(1) Restatement of Judgments). Judge MENCER then went on to recognize that from this rule the courts have noted several requirements. "Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only as to those matters in issue that (1) are identical; (2) were actually litigated; (3) were essential to the judgment . . . ; and (4) were 'material' to the adjudication." *Id.* at 619, 300 A.2d at 820-21. Applying these criteria to the instant case it is apparent that collateral estoppel is inapplicable. The issue before DPW which was *actually* litigated was the timeliness of the appeal. The merits were never litigated and what provider *sought* unsuccessfully to appeal before DPW is not the proper focus of the inquiry in determining whether the doctrine of collateral estoppel applies. In short, because the issue litigated

before DPW was one of timeliness and the issue litigated before the Board was whether a breach of contract had occurred, the issues actually litigated are different; therefore, the doctrine of collateral estoppel is inapposite here.[2] Having determined that collateral estoppel does not apply here we now consider the merits of the case.

## THE MERITS

DPW's final argument is that there was no evidence that Provider sustained monetary damages. We disagree. Provider's Director of Finance testified that the allowable cost for per diem expenses for depreciation was $3.02 and that that figure when applied to the 931 skilled patient care days and 211 immediate patient care days provides a total of $3,448.84, the amount in dispute. N.T. at 36-38. Furthermore, it is undisputed that applicable DPW regulations establish that a provider is entitled to reimbursement for per diem net operating costs which have ceiling limits plus *separate* reimbursement for, *inter alia,* capital depreciation. It is also undisputed that DPW applied the ceilings to *overall* costs, not just net operating costs and thus Provider's depreciation costs were included in the category which was subject to ceiling limitation rather than being reimbursed separately. Despite these admissions, DPW presented a witness who made a conclusory statement, without supplying any underlying facts, that Provider, under the method actually employed by DPW, received more money than it would otherwise have received. The Board, in allowing the costs, obviously did not credit this testimony. Matters of credibility and the weight to be given the evidence are within the exclusive domain

[2] *City of Philadelphia v. Lindy,* 71 Pa. Commonwealth Ct. 515, 455 A.2d 278 (1983), upon which DPW relies, dealt with the failure to exhaust administrative remedies.

of the Board. *Allan N. Lashner, Inc. v. Department of Highways*, 17 Pa. Commonwealth Ct. 217, 331 A.2d 250 (1975). DPW, having admitted the violations of its own regulations, cannot now be heard to complain if its witness was found not credible. The order of the Board is affirmed.

ORDER

Now, October 10, 1986, the order of the Board of Claims, Docket No. 777, entered August 15, 1985, is hereby affirmed.