564 A.2d 1335

**TWINING VILLAGE, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1989.

Decided Oct. 13, 1989.

Reargument Denied Dec. 21, 1989.

166

Caroline F. Achey, McBride and Murphy, Newtown, for petitioner.

Bruce G. Baron, Asst. Counsel, for respondent.

Before CRAIG, BARRY and COLINS, JJ.

COLINS, Judge.

Twining Village, the proprietor of a total life care retirement community, petitions for review of the October 26, 1988 order of the Secretary of Public Welfare granting the Department of Public Welfare's (DPW) request for reconsideration and reversing an Order of the Director of the Office of Hearings and Appeals (OHA) dated June 26, 1984. DPW has filed a motion to dismiss the appeal which, pursuant to order, was argued concurrently with the merits of Twining Village's petition.

## BACKGROUND

Twining Village consists of a skilled nursing care facility (nursing home) and a residential apartment community. As a provider of nursing home services, Twining Village participated in the Pennsylvania Medical Assistance Program. This appeal involves the rate set by DPW for interim payments to Twining Village for the period from July 1, 1982 through June 30, 1983.

Twining Village filed a timely appeal of this interim rate with DPW on March 1, 1983, contesting the amount of interest on capital indebtedness recognized in the interim rate.[1] Hearing Officer Mary Dilks issued a recommendation that Twining Village's appeal be sustained and that DPW be required to recompute the interim rate and allocate interest income in the same manner that interest expense is allocated. In its order of June 26, 1984, the Acting Director of OHA adopted this recommendation. DPW filed a timely request for reconsideration with OHA on June 27, 1984.

---

1. Section IV(D)(10) of DPW's Medical Assistance Program Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities, 8 Pa.B. 2833 (1978) was in effect during the pertinent time period. It provided that necessary and proper interest expense on capital indebtedness is an allowable cost item in establishing interim rates. Further, it provided that "[i]nterest expense, reduced by investment income, except on the investment income as derived from gifts or grants which are restricted by the donor and which are accounted for separately from other Funds, will be recognized."

On July 26, 1984 the Executive Deputy Secretary of DPW issued what was termed as a *"Preliminary Order Request for Reconsideration."* This order reads in pertinent part:

[a]nd now, this 26th day of July, 1984, a Request for Reconsideration has been filed by the Department and *that request will be considered. However, before making a decision on this request, I am requesting that the appellant provide me in writing of his/her reasons to oppose the Department's request.* Attached to this Preliminary Order is a copy of the Department's request. In order for me to review the appellant's reasons, the reasons must be submitted in writing and received by me within ten (10) days from the date of this Preliminary Order. (Emphasis added.)

No further order was issued on the request for reconsideration until October 26, 1988, when a final order was entered by the Secretary of DPW granting reconsideration and reversing the June 26, 1984 order on the merits. A timely petition for review of that order was filed by Twining Village with this Court.[2]

## MOOTNESS

■ DPW contends that because the final audit and settlement of Twining Village's rates for the period from July 1, 1982 through June 30, 1983 has been made and no appeal of the final rates was filed, the appeal of the interim rates for that period is now rendered moot. Twining Village counters that although it did not appeal the final rates, DPW's pertinent regulation at 55 Pa.Code § 1181.101, provides for a separate appeal from the establishment of interim rates. Twining Village cites this Court's decision in

2. Twining Village indicated in its petition for review to this Court that although the final order contains the stamp of OHA indicating that it was mailed on October 26, 1988, this mailing was returned to DPW due to an incorrect address and was remailed to counsel for Twining Village on December 5, 1988. This fact is substantiated in the record by a true and correct copy of the envelope showing a postmark of December 5, 1988 and a true and correct copy of correspondence from DPW confirming these events. Accordingly, Twining Village's petition for review, filed on December 28, 1988, was timely.

*Renovo Hospital Association v. Department of Public Welfare,* 83 Pa.Commonwealth Ct. 355, 480 A.2d 1260 (1984), in support of its argument that the two appeals are separate and should be considered separately.

Nursing facilities participating in the Medical Assistance Program receive payment from DPW for care provided to eligible recipients. 55 Pa.Code § 1181.1. These facilities are initially reimbursed through interim per diem rates established by DPW. These interim per diem rates are based upon the latest adjusted reported net operating cost of the facility plus an allowance for depreciation and interest. These interim per diem rates must be within the ceilings on net operating costs set by 55 Pa.Code § 1181.66 and remain in effect for no less than 6 months. 55 Pa.Code § 1181.67.

Pursuant to 55 Pa.Code § 1181.69, DPW or the facility makes an annual adjustment based on total audited costs related to the total DPW interim claims for services for the fiscal year. Each facility is required to submit a cost report to DPW within 90 days following the close of the fiscal year.[3] DPW audits the cost report[4] and the auditors then certify to DPW the allowable cost for the facility as a basis for calculating a per diem and an annual adjustment. Thereafter, based on the auditors' certification and the *interim payments* received by the facility, DPW computes adjustments due the facility or due DPW for the fiscal year. DPW then notifies the facility of the annual adjustment due after the audit of the annual cost report.[5]

In this case, Twining Village disputed the method of calculation applied by DPW in figuring its interim rates and timely appealed those rates. OHA concluded that DPW had in fact erred in its computation and in its order of June 26, 1984, ordered DPW to recompute those rates. DPW requested reconsideration and a dispute remains as to whether that request was "acted upon" on July 26, 1984 or on

3. *See* 55 Pa.Code § 1181.71(a).
4. 55 Pa.Code § 1181.74(a).
5. 55 Pa.Code § 1181.74(c).

October 26, 1988. We reserve discussion on that issue to the latter portion of this opinion. However, it is undisputed that in the intervening time period, while a decision on the interim rates was pending, DPW conducted its final audit and settlement of Twining Village's rates for the fiscal year in question.

DPW now contends that Twining Village's failure to appeal the final audit and settlement renders the appeal on the interim rates moot. We must disagree and in doing so note that as provided in DPW's regulations, the computation of any adjustments due a facility or DPW is based upon the auditors' certification and the *interim payments* made to a facility. 55 Pa.Code § 1181.74(c). In general terms, we interpret this regulation as indicating that DPW subtracts the interim payments made to a facility from the auditors' certification of allowable costs for that facility to compute the difference due DPW or the facility.

In this case, Twining Village's interim rates were in dispute at the time DPW issued the final audit and settlement to Twining Village. We agree with Twining Village that the final audit and settlement was subject to the outcome of the interim rate appeal.

DPW's regulations provide for a separate interim rate appeal. To impose a requirement upon a facility to file an appeal from the final audit and settlement as well as an appeal from the interim rates in order to preserve the interim rate issue is absurd. If we accept DPW's argument that an interim rate appeal becomes moot if a facility does not file an appeal from the final audit and settlement, we are in effect saying that the interim rate appeal has no purpose, unless, of course, that appeal is resolved prior to the final rate settlement. Although we have no gauge on the time frame within which interim appeals are typically resolved, this appeal, in and of itself, evidences the fact that an interim rate appeal may be yet unresolved years after the final audit and settlement is complete.

DPW's regulation at 55 Pa.Code § 1181.74 provides for no re-examination of the interim per diem rates during the

final audit and settlement. Thus, the only mechanism by which a facility may challenge the calculation of the interim rate is through the interim rate appeal. Assuming that a facility did not file an interim rate appeal and then did file an appeal from the final audit and settlement, the facility would certainly be precluded from challenging the interim rates at that point in time because the regulations provide for appeal of the interim rates.

The language in this Court's decision in *Renovo Hospital* lends further support for our conclusion. Therein, we stated:

> DPW contends No. 23–81–85, regarding interim reimbursement settlement rates, was moot in light of Bucktail's appeal of the final reimbursement settlement rates at No. 23–81–189. We do not agree because those appeals were independent of one another and timely made and, therefore, should be heard by DPW, in accordance with the provisions of 55 Pa.Code § 1181.101.

DPW's attempt to distinguish *Renovo Hospital* from this case on the basis that no final settlement had yet been made is unpersuasive.

▮ Finally, DPW cites 55 Pa.Code § 1181.101(c) for the proposition that the final audit and settlement cannot be changed at this point in time. That section provides in pertinent part:

> [t]hose findings contained in a facility's audit report which are not appealed by the facility within the 30–day limit will not be considered as part of a *subsequent* appeal proceeding. (Emphasis added.)

Twining Village's interim rate appeal was timely filed previous to the resolution of the final audit and settlement. This is not a *subsequent* appeal proceeding and, thus, this section of the regulations has no application to this case.

DPW also cites *Quincy United Methodist Home v. Department of Public Welfare*, 109 Pa.Commonwealth Ct. 230, 530 A.2d 1026 (1987). In *Quincy*, a provider filed a petition to reopen its fiscal year 1981 cost report with DPW.

DPW denied the petition and the provider appealed to this Court. We held that the Secretary of DPW did not abuse his discretion in denying the petition to reopen a *prior year cost report* in the absence of the filing of an appeal from that report by the provider despite the fact that a DPW auditor had failed to detect and correct an error made by the provider.

*Quincy* is not dispositive of this case. In this appeal Twining Village is not seeking to reopen a *prior year's* audit. It simply seeks to have the interim rates for the relevant fiscal year computed correctly. The final audit and settlement for that fiscal year was necessarily dependent upon the computation of the interim rate reimbursement. Thus, the final audit must be re-examined based upon the interim rates as recomputed. In reaching this result, we in no way overrule our decision in *Quincy* which involved the exercise of discretion on the part of the Secretary of DPW. We emphasize that the final audit and settlement for the fiscal year in question was invalid on the basis that the interim rates figured into the computation were being challenged in a separate appeal proceeding authorized by DPW's regulations.

In accordance with the foregoing discussion, we deny DPW's motion to dismiss for mootness and shall proceed to resolve the timeliness issue raised by Twining Village.

## TIMELINESS

■ Twining Village submits that OHA failed to act upon DPW's request for reconsideration within thirty days of the filing of the request as required by 1 Pa.Code § 35.241(d). It argues that the preliminary order filed on July 26, 1984 did not constitute "action" on the part of OHA and, therefore, resulted in a deemed denial of the request for reconsideration. Furthermore, this deemed denial therefore renders the order of the Secretary of Public Welfare, dated October 26, 1988, null and void. Twining Village also avers that DPW failed to take an appeal from the June 26, 1984 order to this Court within the allotted time and, therefore,

this Court should vacate the order of October 26, 1988 and reinstate the June 26, 1984 decision of OHA.

Our examination of the preliminary order dated July 26, 1984, the case law developed in this area, and the pertinent regulations reveals that OHA failed to act upon DPW's request for reconsideration in a timely fashion. When a request for reconsideration of a final order is made within fifteen days of that order, but no appeal of the initial order is filed with this Court, the agency head has thirty days from the date of the request for reconsideration in which to act on the request. 1 Pa.Code § 35.241(d).[6] A failure to act on the request within thirty days results in the request being deemed denied. *Id.*

In the case at hand, DPW filed no appeal to this Court from the order of June 26, 1984. Accordingly, OHA had thirty days from June 27, 1984, the date upon which the request for reconsideration was filed, in order to act on the request. The question presented for our resolution is whether the preliminary order issued by OHA on July 26, 1984, constitutes "action" sufficient to fulfill the statutory requirement.

The language of the preliminary order is clear. Therein, it is indicated that the "request will be considered" and that "before making a decision on this request" written reasons opposing the request would be required of Twining Village. Clearly, OHA neither granted nor denied reconsideration in that order. DPW submits that since the preliminary order calls for the filing of a response to the request for reconsideration, OHA intended to grant reconsideration. DPW cites this Court to 1 Pa.Code § 35.241(c). That section provides:

> (c) Response. No answers to petitions for rehearing or reconsideration will be entertained by the agency. If, and to the extent, however, that rehearing or reconsidera-

---

**6.** 1 Pa.Code § 35.241(d) provides:
   (d) Action on. Unless the agency head acts upon the application for rehearing or reconsideration within thirty days after it is filed, or within the lesser time as may be provided or prescribed by law, the application shall be deemed to have been denied.

tion is granted by the agency head, a response in the nature of an answer may be filed by any participant within fifteen days after the issuance of the order granting rehearing or reconsideration. The response shall be confined to the issues upon which rehearing or reconsideration has been granted.

This Court had cause to interpret that section in *Brookline Manor Convalescent Rest Home v. Department of Public Welfare*, 89 Pa. Commonwealth Ct. 630, 492 A.2d 1207 (1985). Therein, we stated:

> [o]ur review of 1 Pa.Code § 35.241(c) indicates that, upon receiving a petition for reconsideration, the agency head must make an initial determination whether to grant or to refuse to grant the petition. *We find support for our view in the fact that the agency head can entertain an answer to a petition for reconsideration only after he has granted that petition and in the fact that the answer, which must be filed within fifteen (15) days of the determination to grant the petition, is 'confined to the issues upon which rehearing or reconsideration has been granted.'* ....
>
> Furthermore, if we were to accept the DPW's argument that the filing of an answer by Brookline Manor tolled the thirty (30) day period in which the Executive Deputy Secretary must act, 1 Pa.Code § 35.241(d), we would be approving a practice whereby the opposing party, here Brookline Manor, could strip the agency head of his power to grant or deny reconsideration simply by filing an answer to the petition for reconsideration. The result would be that, under the circumstances presented here, the Executive Deputy Secretary would have no choice concerning whether or not to grant reconsideration. We believe this would be contrary to the basic intent of 1 Pa.Code § 35.241(c). (Emphasis added.)

*Id.*, 89 Pa. Commonwealth Ct. at 633–34, 492 A.2d at 1208–09. Although the facts of the instant matter are somewhat different from those presented in *Brookline*, the same

underlying principles apply. The clear language of the preliminary order indicated that the request for reconsideration was not yet acted upon. Contrary to DPW's assertions, the fact that OHA ordered Twining Village to file reasons in opposition to the request for reconsideration in that preliminary order does not render that order a grant of reconsideration. In addition, neither does the action of Twining Village in filing the response transform the preliminary order into an order granting reconsideration. *See Brookline.* Finally, the fact that DPW eventually did issue its order on October 26, 1988 granting reconsideration lends further support for our conclusion.

As we have concluded that OHA failed to act upon the request for reconsideration within thirty days of the filing of that request, it necessarily follows that the request for reconsideration is deemed denied. DPW filed no appeal to this Court from the June 26, 1984 final order of OHA. Consequently, the Secretary of Public Welfare was without authority to grant reconsideration and issue a decision on the merits in its order of October 26, 1988. *Brookline.*

## CONCLUSION

The motion to dismiss on the basis of mootness filed by DPW is denied. We hold that the order of the Secretary of Public Welfare issued on October 26, 1988 is null and void and reinstate the order of OHA dated June 26, 1984.

## ORDER

AND NOW, this 13th day of October, 1989, the motion to dismiss filed by the Department of Public Welfare is denied. The October 26, 1988 order of the Secretary of Public Welfare in the above-captioned matter is null and void and, therefore, we hereby reinstate the order of the Office of Hearings and Appeals dated June 26, 1984.