**PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Petitioner,**

v.

**RIVER STREET ASSOCIATES d/b/a Riverstreet Manor, individually and on behalf of all Pennsylvania nursing facility providers similarly situated, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 2001.

Decided Jan. 8, 2002.

Publication Ordered April 15, 2002.

Mary Frances Grabowski and John A. Kane, Harrisburg, for petitioner.

---

Daniel K. Natirboff, Harrisburg, for respondent.

Before McGINLEY, J., SMITH–RIBNER, J., and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

### ORDER

AND NOW, this 5th day of April, 2002, it is ORDERED that the above-captioned opinion filed January 8, 2002 shall be designated OPINION rather than MEMORANDUM OPINION, and it shall be reported.

Before us is an interlocutory appeal by permission granted by this Court[1] of the denial of the Department of Public Welfare's (DPW) preliminary objections to a complaint filed with the Board of Claims by Riverstreet Associates (Riverstreet).

On August 28, 2000, Riverstreet, a nursing facility, and fifteen other entities filed a class-action complaint with the Board of Claims.[2] Riverstreet alleged that it had a provider agreement with DPW, and that the agreement was a contract which DPW breached.

Specifically, Riverstreet alleged that DPW violated, misinterpreted or misapplied regulations that govern the computation of certain Medicaid reimbursement rates.

DPW administers the Commonwealth of Pennsylvania's Medicaid program, known as the medical assistance program. To participate in the Medicaid program, the

---

1. This Court accepted jurisdiction based on DPW's petition for review filed pursuant to the footnote to Pa.R.A.P. 1311 Interlocutory Appeals by Permission when the Board of Claims refused to amend its order to include the prescribed statement certifying the appeal for review.

2. The class has not been certified. All of the plaintiffs except Riverstreet withdrew from this action after they filed their answer to DPW's preliminary objections.

state must comply with Title XIX of the Social Security Act[3] and the relevant federal regulations. A state plan must, among other things, provide for coverage of nursing facility services and provide for an appeal procedure that allows individual providers to submit evidence and receive administrative review of payment rates. 42 C.F.R. §§ 427.252(a).

Nursing facilities have the option of enrolling in the program as "participating providers." To enroll the nursing facility must complete a "provider agreement." 42 C.F.R. § 431.107(a). Federal law specifies the mandatory contents of the provider agreements and does not require the state to include payment provisions in the provider agreements.[4] DPW's current form provider agreement does not include any payment provisions.

When an enrolled provider provides nursing facility services to a medical assistance eligible recipient, the provider submits invoices to DPW for reimbursement. Section 443.1 of the Public Welfare Code[5] prescribes payment rates established by DPW. 62 P.S. § 443.1(3).

DPW changed its rate system as of January 1, 1996. Prior to January 1996, DPW reimbursed nursing facilities using a retrospective, cost-based reimbursement system. Under the new system, DPW reimburses prospectively based on the "case-mix" reimbursement system. 55 Pa.Code § 1187. Under this system, DPW annually establishes a case-mix-adjusted prospective rate for each nursing facility at the beginning of the state fiscal year and adjusts each nursing facility's prospective rate quarterly during the rate year. 55

Pa.Code § 1187.141(a)(7),(8). The nursing facility is reimbursed for services on the basis of its prospective rate in effect during the fiscal quarter in which services were rendered.

DPW annually computes the case-mix rate based upon "peer group prices." The peer group prices are then used by DPW as data in the process of setting the net operating rate components for each nursing facility. DPW's determinations are identified by DPW's regulations as decisions (case-payment decisions). When DPW makes a case payment decision, it sends written notice to individual nursing facilities affected by the decisions. DPW also notifies all medical assistance nursing facilities when it establishes peer group prices by publishing notice in the Pennsylvania Bulletin. 55 Pa.Code § 1187.95(a)(4).

If a facility disagrees with the decision the nursing facility has the right to appeal that decision to DPW's administrative tribunal, the Bureau of Hearings and Appeals (BHA). 55 Pa.Code § 1187.141. If a facility prevails in its appeal, DPW's regulations provide that the facility's payments will be increased.

At issue in this instance are the peer group prices and per diem rates for case-mix rate year 4, July 1, 1998–June 30,1999, (Year 4) and case-mix rate year 5, July 1, 1999–June 30, 2000, (Year 5).

DPW published its peer group rates in public notices and, after public comments and review, made rate corrections. DPW informed Riverstreet by letter of the per diem rates for Year 4 and Year 5.

---

**3.** 42 U.S.C. § 1396a.

**4.** DPW is required to have providers execute provider agreements that impose binding obligations on providers. 42 U.S.C. § 1396a(a)(27); 42 C.F.R. § 431.107.

**5.** Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 101–1503.

Riverstreet challenged the Year 4 and Year 5 peer group prices and payment rates.[6]

DPW preliminarily objected. The Board of Claims denied DPW's preliminary objections. DPW filed three petitions for review[7] including the appeal now before the Court. The Board of Claims found:

A review of the case law shows that the fundamental question for the Board to decide is whether or not the claims before it are derived from a contract or otherwise. If the claims arise from a contract, the Board has subject matter jurisdiction. The Board finds that the claims set forth by the Plaintiff [Riverstreet] are derived from a contract and, therefore, the Board does have subject-matter jurisdiction. The Plaintiff [Riverstreet] entered into a provider agreement with DPW as a basis for the care and services they provide. The claims advanced by the Plaintiff [Riverstreet] in the case before the Board are based on the contractual relationship between the parties.

Opinion of the Board of Claims, May 25, 2001, at 6.

■ On appeal[8] DPW raises the following issues: (1) whether the Board of Claims has jurisdiction to hear disputes about the application, interpretation and validity of DPW's Medicaid rate-setting regulations; (2) whether Riverstreet's case is ripe for review; (3) whether Riverstreet must first exhaust its administrative remedies; (4) whether the Board of Claims should defer to DPW's primary jurisdiction to resolve issues regarding the interpretation, application, and validity of DPW's Medicaid rate-setting regulations; and (5) whether the Board of Claims' decision overruling DPW's preliminary objections deprived DPW of its sovereign immunity.

### Subject Matter Jurisdiction

DPW first contends that the Board of Claims does not have subject matter jurisdiction over Riverstreet's claims because Riverstreet's claims do not arise from any contract rather they derive from DPW's regulations.

■ Section 4 of the Board of Claims Act[9] states, "[t]he Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more." 72 P.S. § 4651–4.

■ For jurisdiction in the Board of Claims, the rights asserted must be derived from the provision of the contract. In *Keenheel v. Pennsylvania Securities*

---

6. Prior to filing the claim with the Board of Claims, Riverstreet filed seven administrative appeals in the BHA which are pending. Riverstreet filed two separate individual claims in the Board of Claims and alleged that DPW breached its contract when DPW set its Year 4 and Year 5 peer group prices and payment rates. This action is also pending.

7. The second petition for review at 1458 C.D. 2001 was dismissed July 2, 2001. The third petition for review invoked the Court's original jurisdiction and requested the Court to grant DPW relief in the nature of a writ of prohibition (320 M.D. 2001). By order of

May 25, 2001, the Court directed that all matters pertaining to that action were stayed until further notice.

8. This Court's scope of review when preliminary objections are overruled is to determine whether the lower court abused its discretion or committed an error of law. *Daw v. Department of Transportation,* 768 A.2d 1207, 1210 n. 5 (Pa.Cmwlth.2001).

9. Act of May 20, 1937, P.L. 728, No. 193, *as amended,* 72 P.S. § 4651–4.

*Commission,* 523 Pa. 223, 565 A.2d 1147 (1989), our Pennsylvania Supreme Court noted, "the jurisdiction of the Board of Claims is not triggered simply because a contract may be involved in an action, rather the jurisdictional predicate is satisfied only when the claimant relies upon the provisions of that contract in asserting the claim against the Commonwealth." *Keenheel,* 523 Pa. at 228, 565 A.2d at 1149. Riverstreet cites no provision of the provider agreement that DPW has allegedly breached. To the contrary, each of the alleged breaches of contract asserted embody disputes over the meaning of the regulations, how they are applied and whether they are valid. The disputes raised by Riverstreet involve promulgated regulations, they do not involve contractual provisions.

In certain instances, this Court recognized that the Board of Claims has subject matter jurisdiction in certain specific provider appeals. In *Department of Public Welfare v. Divine Providence Hospital,* 101 Pa.Cmwlth. 248, 516 A.2d 82 (1986). Divine Providence Hospital (Provider) filed a claim before the Board of Claims and alleged its provider agreement was a binding contract. Provider contended DPW breached this provider agreement by not reimbursing in accordance with DPW regulations as required by the provider agreement. *Divine Providence,* 516 A.2d at 83. DPW argued that subject matter jurisdiction was with the DPW Office of Hearings and Appeals. This Court found that while DPW established an appeals procedure for provider claims, it did not prohibit a cause of action for breach of contract under state law. *Divine Providence,* 516 A.2d at 85. This Court noted as follows:

> We have already decided, however, that a cause of action in contract as asserted by an alleged breach of a provider agreement is, in certain circumstances, properly brought before the Board. In

Department of Public Welfare v. Shapiro, 91 Pa.Cmwlth. 64, 496 A.2d 887 (1985), DPW denied payment to a provider alleging that it (DPW) had never received invoices. We distinguished Shapiro from cases where DPW would have jurisdiction because of its expertise. Such cases included those where the issues involve a determination of eligibility for benefits or a determination of whether and to what extent a provider may have breached the terms of a provider agreement. Shapiro. We reasoned in Shapiro that where the only question was whether DPW had received the invoices the matter was purely and simply contractual and hence within the Board's jurisdiction. As in Shapiro, this case does not involve a question of eligibility or provider breach, but concerns the question of whether DPW breached the provider agreement by not following its own regulations.

*Divine Providence,* 516 A.2d at 84. In *Divine Providence,* the Board was not "adjudicating the payment rates; it is merely deciding whether DPW's action, here its method of determining whether the payments were due, constituted a breach of the provider agreement." *Divine Providence,* 516 A.2d at 85.

This Court finds the current controversy distinguishable from *Divine Providence.* Here, the dispute centers on the meaning and interpretation of regulations not whether DPW breached the provider agreement by not following its regulations. At issue is a complicated method of establishing payment rates and setting payment rates. This is within the specific expertise and delegated legislative authority of DPW. *Pennsylvania Pharmacists Association v. Department of Public Welfare,* 733 A.2d 666, 673 (Pa.Cmwlth.1999).

Also, as DPW points out, the past cases that recognized the Board of Claim's jurisdiction dealt with an obsolete form of the provider agreement. DPW redrafted the provider agreement to support its long-standing position that its relationship with MA providers is not one of contract but one of a federal-state grant program. While DPW's obligation to pay Riverstreet in accordance with law and regulation may be an implied term of the provider agreement a regulatory dispute cannot be converted into a contractual one through the device of implied terms. *Yurgosky v. Administrative Office of the Pennsylvania Courts,* 554 Pa. 533, 722 A.2d 631 (1998).

This Court finds Riverstreet's claims derive from DPW regulations and not from issues of contract. Therefore, we find there is no jurisdiction with the Board of Claims.

Accordingly, we reverse and this case is remanded to the Board of Claims with instructions to sustain DPW's preliminary objections and dismiss the complaint.[10]

### *ORDER*

AND NOW, this 8th day of January, 2002, the decision of the Board of Claims in the above-captioned matter is reversed and this case is remanded to the Board of Claims with instructions to sustain the preliminary objections of the Department of Public Welfare and dismiss the complaint. Jurisdiction relinquished.

10. Because we find that the Board of Claims does not have jurisdiction over the claims raised we need not examine whether Riverstreet's claims are ripe for review, whether Riverstreet must exhaust its administrative remedies, whether the Secretary of Public Welfare should have primary jurisdiction or whether the Board of Claims jurisdiction over medical assistance payments should be narrowly construed consistent with sovereign immunity.