Patricia F. DAW

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANS- PORTATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2000.
Decided Feb. 16, 2001.

Jeffrey L. Giltenboth, Pittsburgh, for appellant.

. John R. Orie, Jr., Pittsburgh, for appellee.

Before McGINLEY, Judge, PELLEGRINI, Judge, and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

The Commonwealth of Pennsylvania, Department of Transportation (Department) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) overruling the Department's preliminary objections to a petition for appointment of a board of viewers filed by Patricia F. Daw (Daw) to assess consequential damages under Section 612 of the Eminent Domain Code of Pennsylvania.[1]

Daw is the owner of property located along West Ingomar Road (Road), a two-

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–612. Section 612 of the Eminent Domain Code provides:

All condemnors, including the Commonwealth, shall be liable for damages to a property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken.

lane state route located in Allegheny County. The Daw property is contoured in such a way that the highest elevation of the property is situated where the property joins the Road. The property then slopes downward away from the Road as it approaches the Daw residence which is approximately 15–20 feet below the elevation of the Road. The driveway on the property, which is unpaved, connects with the Road at its highest elevation and also slopes steeply downward. There is also a narrow concrete sidewalk along the front of the Daw property with a low-earth mound located behind it.

The property itself is located just after the end of a super-elevated curve which aids motorists in negotiating the bend of the Road and is designed to divert water away from the high side of the Road toward the low side. As you approach the Daw driveway, the curve straightens and the Road assumes a normal crown configuration in which the center of the Road is slightly higher than its edges to allow water hitting the left side to fall left and the right side to fall right.

In July 1992, the Department resurfaced the Road by placing a one-inch thick layer of asphalt over the existing Road surface. Later that same year, the Department re-paved the deteriorated berm of the Road which was comprised of cinders and soil and extended its width which was all within the Department's right-of-way.

On March 11, 1997, Daw filed a petition for the appointment of a board of viewers pursuant to Section 502(e) of the Eminent Domain Code (Code), 26 P.S. § 502(e),[2] alleging that the Department's resurfacing of the Road by adding one inch in height to its surface changed the grade of the Road, creating severe water drainage problems and damage to Daw's property.

Daw sought to recover consequential damages authorized under Section 612 of the Code. The Department filed preliminary objections to Daw's petition which were dismissed by the trial court on August 4, 1997. The trial court ordered the matter to proceed to the board of viewers for a hearing and the Department appealed to this Court. We vacated the trial court order because it failed to resolve the factual conflict of whether the Department's maintenance project changed the grade of the Road and remanded to the trial court to resolve that issue.[3]

At the hearing on whether there was a change in grade, Daw, in her deposition, testified that while experiencing some runoff problems on her property prior to the Department's resurfacing project, the runoff significantly increased after the project concluded. Specifically, she testified that the walls in her house began cracking and her driveway eroded away. She also testified that the sidewalk and mound located in the front of her property were there prior to her residency, and that the only repair she made to her property prior to 1992 was the addition of a new roof.

To support the contention that the paving of the Road caused her injuries, Daw offered the expert report of Donald B. Partridge, a civil engineer who is also the Town Engineer of McCandless. However, his report opined that runoff water from the Road flowed *naturally* down the driveway, causing erosion to the gravel surface. To prevent the runoff from flowing down Daw's driveway, he noted that the Road should be curbed. Further, his report did not indicate that there was an increase in water runoff subsequent to the repaving, and he specifically stated that there was no damage to the house from the water running down the Road.

---

**2.** Section 502(e) provides:
(e) If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in sub-section (a) of this section, setting forth such injury.

**3.** *Commonwealth of Pennsylvania, Department of Transportation v. Daw* (No. 306 C.D.1998, 734 A.2d 497, filed March 8, 1999).

The Department offered the deposition testimony of Andrew Cost, Maintenance Program Engineer for the Department, who testified that the earth mound located on the Daw property caused water to flow toward the Daw driveway instead of being evenly dispersed throughout her property. He further testified that the one-inch overlay placed over the Road by the Department was of uniform thickness across the width of the Road and would not cause any more water to flow on Daw's property than had flowed prior to the repaving.

The Department also offered the deposition testimony of Richard Heiser, Highway Maintenance Manager for the Department, who performed routine maintenance on the Road. He observed the property during a rainstorm after the maintenance work was completed by the Department, and found that the water was moving away from the Daw property. Further, the water on the shoulder of the Road was falling toward the Daw property but was of no great concentration. Moreover, he observed that after the maintenance project, the berm of the Road was extended further into Daw's property and there was not a smooth transition from the berm of the Road to her driveway.

■ Even though the change of grade was only one inch, the trial court dismissed the Department's preliminary objections, finding that it was a change of grade entitling Daw to damages under Section 612 of the Code because the berm grade was changed and extended. It based its decision on Daw's expert's report, photographs

of the damaged property and Daw's testimony that she never experienced a substantial flow of water from the Road prior to the 1992 resurfacing project.[4] This appeal followed.[5]

■ The Department contends that the trial court erred in finding that the one-inch resurfacing constituted a change in grade entitling Daw to consequential damages under Section 612 of the Code. It argues that for there to be a change of grade, it must be substantial and not merely a one-inch addition in height added as part of a normal street resurfacing project.[6]

■ Section 612 of the Code permits abutting property owners recovery of consequential damages as a result of only three causes: (1) change of grade of a road or highway; (2) permanent interference with access to a road or highway; and (3) injury to surface support. *Capece v. City of Philadelphia,* 123 Pa.Cmwlth. 86, 552 A.2d 1147 (1989). Under this provision, when a change in grade of the abutting street causes water run-off to damage property, a landowner is not limited to a trespass action to recover for damage to his or her property, but can also bring an action under Section 612 for a *de facto* taking. *Borough of Dickson City v. Malley,* 94 Pa.Cmwlth. 386, 503 A.2d 1035 (1986). However, unlike a trespass action, to make out a claim for consequential damages, the landowner must establish both that there was a change of grade and that

4. The trial court determined the following:

> Mr. Partridge opined that the effect of the improvement affected the flow of the surface water, which previously dissipated in the berm, to now run off the roadway down Daw's driveway. Mr. Partridge indicated that the problem of surface water runoff was caused by the Department's failure to properly ground the shoulder of the road to allow the runoff water to be disbursed along the frontage of Daw's property.
> Nothing in Mr. Partridge's expert report supports that finding.

5. In a case where the trial court overrules preliminary objections to a petition for appointment of a board of viewers, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed legal error. *Maurizi v. Commonwealth, Department of Transportation,* 658 A.2d 485, 487 (Pa.Cmwlth.1995).

6. Daw also contends that the paving and widening of the berm of the Road increased the runoff. However, any runoff due to a change in the berm is not cognizable damages as defined under 612 of the Code.

change caused the damages to landowner's property.

◼ As to the first prong, that a change in grade must result, no Pennsylvania cases have squarely addressed the issue of what constitutes a change in grade to allow an action for a *de facto* taking. Generally, though, the "mere removal of irregularities or improvement of the street is not to be regarded as a change of grade for which compensation may be had. Anything more than this may constitute a change of grade." 44 C.J.S. 432. Confirming that view, the Court in *Williams v. State of New York*, 34 A.D.2d 101, 309 N.Y.S.2d 795 (1970), stated that:

Where the facts establish that the construction performed consisted of minor adjustments to the road surface for purposes of repair or improvement, or consisted of causing the inequalities of the street to conform to an already established and existing grade, there was no change of grade within the meaning of the statute... Thus, where the existing road is rough and irregular, the municipality works no change of grade by smoothing and topping the surface even though the effect is to raise or lower parts thereof since the act intended to be an improvement merely brings the road to a consistent level rather than to make it higher or lower.

*Id.* at 103, 309 N.Y.S.2d at 798.

In the instant case, the one-inch thick uniform resurfacing of the Road and berm in need of repair does not constitute a change of grade under Section 612 of the Code. As the court reasoned in *Williams*, this type of re-topping of the Road was *normal maintenance* work to bring the Road to a consistent level rather than making it higher or lower, and, as such, was not a change of grade. Therefore, any remedy that Daw may have is limited to damages in trespass against the Commonwealth. *See City of Pittsburgh v. Gold*, 37. Pa.Cmwlth. 438, 390 A.2d 1373, 1376 (1978).

◼ Even if we had decided that the resurfacing project created a change of grade, we still would not have awarded damages to Daw because neither Daw nor her expert's testimony established that the resurfacing caused any increased water runoff or damage to the property. While Daw did testify that there was an increase in runoff after the Department's maintenance project, she did not specify which aspect of the project, i.e., the berm work (which is not a change of grade) or the resurfacing of the roadway, caused of her injury. She admitted that her driveway had eroded prior to the resurfacing and made out no increase in damage caused by the resurfacing. Daw's expert specifically testified that there was no damage to Daw's house as a result of the water runoff, and that any runoff occurred naturally. He never opined that any of this was the result of the retopping. Having not established that the retopping itself caused any damages to Daw's property, her claim must fail.

Accordingly, the trial court's order dismissing the Department's preliminary objections is reversed.

### ORDER

AND NOW, this 16th day of February, 2001, the order of the Court of Common Pleas of Allegheny County dated April 4, 2000, is reversed.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's decision to reverse the trial court's order that overruled the Department's preliminary objections. The majority finds that the one inch resurfacing did not constitute a change of grade and that even if there were a change of grade, the damages are inappropriate because Daw did not establish that the resurfacing caused increased water runoff or damage to her property.

I believe that a one inch thick resurfacing along the main portion of the roadway coupled with the subsequent paving of the

berm or shoulder constitutes a change of grade entitling Daw to consequential damages. *See* Deposition of Andrew Kost, July 28, 1997, at 7; Reproduced Record (R.R.) at 57a.

In contrast to the majority, I believe the trial court's determination that Daw sufficiently established that the resurfacing caused increased water runoff and damage to her property, thus warranting the dismissal of the Department's preliminary objections is supported by her testimony. Even though the report of her expert, Donald B. Partridge, P.E., is admittedly not as clear or as strong as possible, I believe that a factfinder could conclude, based upon reasonable inferences drawn from the report that Daw suffered damage to her property as a result of increased water damage caused by the change of grade. I find no legal error or abuse of discretion by the trial court. This controversy deserves to proceed to a board of viewers.