Elizabeth HARRINGTON,

v.

**COMMONWEALTH of Pennsylvania, Department of Transportation, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 2001.

Decided Feb. 21, 2002.

William Christopher Duerr, King of Prussia, for appellant.

Kenneth R. Werner, West Chester, for appellee.

Before: KELLEY, Senior Judge [1], FLAHERTY, Senior Judge, JIULIANTE, Senior Judge.

---

**1.** This case was assigned to the opinion writer prior to the date when Judge Kelley assumed the status of senior judge on January 1, 2002.

JIULIANTE, Senior Judge.

The Department of Transportation (DOT) appeals from the March 24, 2000 order of the Court of Common Pleas of Chester County (trial court) that overruled DOT's preliminary objections to Elizabeth Harrington's (Harrington's) petition for appointment of a board of viewers for a *de facto* taking under Section 502(e) of the Eminent Domain Code (Code).[2] In this case, we revisit the issue of what constitutes a change of grade sufficient to allow an action for a *de facto* taking under Section 612 of the Code,[3] taking into consideration the seminal case on this issue, *Daw v. Department of Transportation,* 768 A.2d 1207 (Pa.Cmwlth.2001). We affirm.

On June 10, 1960, Harrington and her husband purchased property located at 894 Horseshoe Pike, U.S. Route 322, East Brandywine Township, Chester County. Over the years, DOT has executed various contracts for work on Route 322, abutting and extending from the west property line to the east property line of Harrington's property. The project at issue is DOT's resurfacing of Route 322 between March and August of 1998.

On June 25, 1999, Harrington filed the petition at issue alleging that she has been substantially deprived of the use and enjoyment of her property due to DOT's necessary repair, maintenance, construction, widening and excavation for the repair, regrading and widening of Route 322. Specifically, she alleged that she has suffered continuous flooding from the rain and water runoff, damage from the change of grade of the highway and permanent interference with any reasonable and safe access to her property. In addition, she averred that her home has sustained damage from snowplows and automobiles running into her home.

DOT filed preliminary objections and the trial court held an evidentiary hearing on February 28, 2000. Harrington testified in support of her petition and, in opposition, DOT presented the testimony of Sal Ali, a civil engineer, and Larry Hamilton, an assistant county maintenance manager.

Ultimately, the trial court concluded that the interruptions, interference and deprivation that Harrington has alleged are substantial and continuously impede the use and enjoyment of her property. It stated that this deprivation of property has resulted in a substantial decrease to the value of her property and that her persistent and relentless nightmare is the direct result of DOT's actions. Specifically, the court stated:

> The evidence shows that the repair, regrading and widening of the highway has caused such severe damage that Petitioner has been forced to leave her home on certain occasions. Despite her persistent complaints, she continues to incur damage from snowplows. . . .
>
> *Further, Penn DOT raised the aforementioned highway 4.5 inches which caused a 12½–13% vertical slope to Petitioner's property* [4] *This raise in the highway causes continuous flooding.*

---

2. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–502(e). Section 502(e) of the Code provides:
   If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury.

3. 26 P.S. § 1–612.

4. As we discuss later on in the opinion, the parties do not seem to seriously dispute that DOT raised the highway 2.5 inches, not 4.5 inches.

*PennDOT also paved the gravel shoulder of the highway which had, at one time, absorbed some of the water running down the aforementioned slope. As a result, Petitioner, who is an elderly and slight woman, has been forced to carry 30–40 pound sandbags to the edge of her property in order to deter some of the flooding. Furthermore, automobiles have run into her home due to the change in the profile of Route 322. These actions have interfered with a reasonable and safe access to Petitioner's property.*

(Trial Court's Opinion at 3) (emphasis added) (footnote added).

Accordingly, the trial court found that there was a *de facto* taking. DOT's timely appeal to this Court followed.

■ DOT states four issues for our review:[5] (1) whether Harrington proved a change of grade under Section 612 of the Code; (2) whether Harrington presented sufficient competent evidence to support the trial court's finding that the grade of Route 322 had been changed; (3) whether Harrington's alleged injuries are properly the subject of a negligence claim and not compensable under the Code; and (4) whether the trial court committed reversible error by making findings of fact not supported by the evidence of record.[6]

We note that Section 612 lists only three causes for which abutting property owners are allowed to recover consequential damages: "(1) change of grade of a road or highway; (2) permanent interference with

access to a road or highway; and (3) injury to surface support." *Daw*, 768 A.2d at 1210 (citation omitted). Under Section 612,

when a change in grade of the abutting street causes water run-off to damage property, a landowner is not limited to a trespass action to recover for damage to his or her property, but can also bring an action under Section 612 for a *de facto* taking. However, unlike a trespass action, to make out a claim for consequential damages, the landowner must establish both that there was a change of grade and that change caused the damages to landowner's property.

*Id.* (citation omitted).

**I**

DOT argues that Harrington failed to prove a change of grade, pointing out that this Court in *Daw* held that the uniform resurfacing of a road in need of repair is normal maintenance work and does not qualify as a change of grade under Section 612. Thus, it argues that a change of grade must be a change in the degree of inclination and not merely a uniform change in height.

In the present case, DOT admits that it resurfaced the roadway and berm of Route 322 and that the result was a 2.5–inch increase in the elevation of the road. It contends, however, that the increase in elevation was uniform across the width of the road and that the slope of the roadway was unchanged by the resurfacing project.

5. In the case of *In Re Flowers*, 734 A.2d 69, 72 n. 8 (Pa.Cmwlth.1999), this Court reiterated that

[i]n all cases alleging a *de facto* taking, the burden of proof lies with the property owners to establish that a *de facto* taking has, in fact, occurred.... Each claim for a *de facto* taking is contingent upon the unique factual matrix of the case. (Citations omitted.)

6. Where, as here, the trial court has overruled preliminary objections to a petition for appointment of a board of viewers, we are limited to determining whether it committed an error of law or abused its discretion. *Tricker v. Pennsylvania Turnpike Comm'n*, 717 A.2d 1078 (Pa.Cmwlth.1998).

Therefore, it alleges that the resurfacing did not constitute a change of grade under *Daw.*

With regard to the landowner's burden to prove a change of grade, DOT notes that Harrington did not testify at all as to the elevation or inclination of the roadway, either before or after the 1998 resurfacing project. DOT, on the other hand, entered plans from 1957 and 1998 into evidence for comparison and introduced the testimony of a civil engineer to demonstrate that neither the grade nor the width had changed based on those plans.

Moreover, DOT argues that the trial court erred in relying upon the lay testimony of Harrington as a basis for its finding that the grade of Route 322 had been altered. It avers that this was a matter of competency of evidence as opposed to credibility and that expert testimony was necessary. It points out that although Harrington testified that the height of the road had been raised 4.5 inches, she never testified that she took measurements of this increase and, if so, where she measured. Thus, DOT argues that such testimony from a lay person was inadmissible and that the record is devoid of any evidence supporting a finding of a change of grade. *See Tennis v. Fedorwicz,* 140 Pa.Cmwlth. 7, 592 A.2d 116 (1991) (expert testimony required where subject matter of inquiry involves special skills and training not common to the lay person.)

Harrington responds that she sufficiently proved that DOT altered the grade of the road. She rejects DOT's "black and white" interpretation of *Daw,* arguing that the Court in that case looked to the scope of the work being done and failed to define in certain terms what constituted a change of grade sufficient to allow a *de facto* taking. To that end, she notes that the Court in that case noted that anything more than the mere removal of irregularities or improvement of the street may constitute a change of grade. Further, she observes that the Court in *Daw* never held that a change of grade must be a change in the degree of inclination and not merely a uniform change in height. Thus, she contends that the trial court did not err in looking into the scope of the project and not merely at DOT's strict measurements.

Moreover, Harrington rejects DOT's characterization of the 1998 roadwork as being merely a uniform change in height across the whole width of the highway as was the case in *Daw.* Harrington notes that DOT milled 1 inch off the existing road and repaved it with 2 inches of binder and 1 to 1.5 inches of wearing surface. (February 28, 2001 Hearing, N.T. 97–100; R.R. 97–100a.) This resulted in an increase in elevation of 2.5 inches, including the shoulders.

Accordingly, Harrington contends that even though the slope of the road from its center to the edge of the shoulder may have remained the same after the 1998 work, the slope in absolute terms from the center of the highway to the front door and garage door increased. She notes that the resurfaced road is at least 2.5 inches higher in relation to the house than it was before the 1998 project, which is especially significant given the fact that the house is 4.5 feet below the shoulder. In addition, she notes that the new curbing installed in 1998 sits at least 4.5 feet above the level of the garage door at a distance of only 10 feet, resulting in a substantial slope.

In addition, Harrington alleges that the paving of the berm has interfered with reasonable and safe access to her home, the second basis for liability for damages under Section 612. Specifically, she maintains that once DOT paved the gravel berm, cars now more frequently travel on

the shoulder, located a merely five feet from her front door. (N.T. 19, 46; R.R. 19a, 46a.) This was not the case in *Daw* where the property owner merely alleged that the re-paving and widening of the berm caused increased water runoff and then was unable to prove her case.[7]

Finally, Harrington maintains that *Daw* is further distinguishable from the present case because the landowner in *Daw* experienced some prior runoff problems, though none that harmed the Daw house, and Harrington testified that she had no runoff problems before the 1998 project. She contends that the 1998 resurfacing in the present case was not a mere smoothing out of a rough and irregular road as was the case in *Daw*. She alleges that the 1998 project was one where DOT totally removed the surface of the road by 1 inch and then added 3.5 more inches to increase the elevation by 2.5 inches.

As a threshold matter, we note that prior to *Daw*, "no Pennsylvania cases ... squarely addressed the issue of what constitutes a change in grade to allow an action for a *de facto* taking." 768 A.2d at 1211. In *Daw*, this Court addressed that issue to the extent that we reversed the trial court's determination that the one-inch resurfacing of the road at issue constituted a change in grade entitling the landowner to consequential damages under Section 612. Specifically, we stated that "this type of re-topping of the Road was normal maintenance work to bring the Road to a consistent level rather than making it higher or lower, and, as such, was not a change of grade." 768 A.2d at 1211.

As for the berm of the road, we rejected Daw's contention that the paving and widening of the berm increased the runoff. We stated that "any runoff due to a change in the berm is not cognizable damages as defined under 612 of the Code"[8] and that the berm work did not constitute a change of grade.

Though instructive, we find *Daw* to be distinguishable from the present case. Here, the trial court concluded that DOT's change in profile of Route 322 substantially impacted Harrington's property to her detriment and loss and that such change in profile interfered with reasonable and safe access to her property. The trial court characterized the change in profile as, *inter alia*, a raising of the highway to such an extent so as to cause continuous flooding and a paving of the gravel shoulder that previously absorbed some runoff. In essence, the trial court concluded that the totality of DOT's actions with regard to Route 322 in the area of Harrington's home substantially deprived her of the reasonable use and enjoyment of her property.

Moreover, we reject DOT's argument that Harrington's testimony could not constitute competent evidence to support her burden. From her first-hand observations as the person who has owned the property since 1960, she testified that, prior to the 1998 project, she had no problem with water on her property. She stated that in May of 1998, DOT's contractor put inlets in for water at each end of her property. (N.T. 18; R.R. 18a.) Further, she testified that, after DOT caused the whole gravel shoulder to be paved, the paved area is now only five feet from her front door. (N.T. 19; R.R. 19a.) She stated that her

---

7. In *Daw,* this Court noted that "Daw's expert specifically testified that there was no damage to Daw's house as a result of the water runoff, and that any runoff occurred naturally. He

never opined that any of this was the result of the re[-]topping." 768 A.2d at 1211.

8. *Id.* at 1210 n. 6.

house is down about four feet from the shoulder. (N.T. 20; R.R. 20a.)

In addition, Harrington testified that she contacted DOT's contractor for the 1998 project about the flooding that resulted from the paving project. Specifically, she testified that

> [a]fter the paving went through there, I had ... really serious water coming in there that I had to block in front of the garage there. I had to grab everything that day ... and put it across the driveway in front of any [sic] garage to keep water out of the house. And then I called the contractor ... [a]nd I said to him, I need help, my place was just flooded completely front and back.
>
> . . . .
>
> And they did come down. They saw what a serious water problem I had. . . .
>
> Q. How serious was it? ...
>
> A. It was flooding. As I said, I was being flooded out. And I quick put everything I could in front of my garage to keep the water out ... and the water continued to come in there and run down through my yard. It come in and went around over my walks and went down through my yard. This is where I never had water before. I had a septic system in there which I was very concerned about. It flooded the back, I would say, that much water.
>
> Q. How much is that you are exhibiting, what depth?
>
> A. I would say four or five, water like that. . . . I have more water coming in there now since the curbing went in, because I'm having about five inches of water come in against the foundation of my home right now. . . .
>
> . . . .
>
> Now that this has been done, they [DOT] lowered that in front of my garage there, and I have that water com-

ing down there and coming right in against the foundation of my home right now and my foyer. And that water is every bit that deep [five or six inches of water].

(N.T. 20; R.R. 20a.)

As a result of Harrington's contact with the contractor, he provided her with sandbags to place in front of her garage in an attempt to stave off the water. Harrington had to move those sandbags every time she wanted to take her car out of the garage. (N.T. 23, 25; R.R. 23a, 25a.)

With regard to the paving of the berm, we note our statement in *Daw* that runoff due to a change in the berm is not cognizable as damages under Section 612 and that berm work does not constitute a change of grade. Notwithstanding that observation, we point out that there was testimony in the present case about how the berm, located within five feet of Harrington's house, permanently interfered with her access. Specifically, Harrington testified that, after the composition of the berm changed, cars more frequently traveled on the berm, thereby interfering with her reasonable and safe access to her property. This clearly differs from an issue as to whether the mere re-topping of a berm that was already paved, as was the case in *Daw*, constituted a change of grade or caused more runoff.

■ Having carefully reviewed the evidence of record, we conclude that the trial court did not err in determining that Harrington presented sufficient evidence of a change in grade that directly resulted in the frequent flooding of her property. The evidence reflects that DOT's actions exceeded normal maintenance work, *i.e.* the mere re-topping that was at issue in *Daw*. In addition, the totality of DOT's actions, including the paving of the berm whereby traffic was brought within five

feet of Harrington's front door, has resulted in permanent interference with her access to the property. Consequently, a change of grade *and* a permanent interference with access to her property have caused Harrington to experience a deprivation in the use and enjoyment of her property.

## II

DOT next argues that Harrington's alleged injuries are properly the subject of a negligence claim and not compensable under the Code. It points out that acts not done in the exercise of eminent domain and not the immediate, necessary and avoidable consequence of that right cannot be the basis of any claim in an eminent domain proceeding. *In re Condemnation of 2719, 21, 11 E. Berkshire St.,* 20 Pa. Cmwlth. 601, 343 A.2d 67 (1975). In addition, damages cannot be obtained in an eminent domain proceeding where the injuries are the result of a trespass. *Id.*

Specifically, DOT avers that the injuries found by the trial court, damages caused by debris thrown by snowplows and by accidents involving third-party automobiles, are properly the subject of negligence or trespass actions. It alleges that these damages are not incidental to or the result of DOT exercising its power of eminent domain. Further, it points out that Harrington claimed that she had been suffering these damages before the 1998 project such that they would not be compensable under the Code for the additional reason that the statute of limitations for consequential damages would have passed.

In response, Harrington contends that she presented sufficient competent ·evidence of exceptional circumstances that deprived her of the beneficial use and enjoyment of her property such that she established a *de facto* taking. She notes her testimony that she cannot even back out of her driveway due to the volume of cars, cars traveling on the paved berm and the lack of sight distance. *See Department of Transportation v. Richards,* 124 Pa.Cmwlth. 432, 556 A.2d 510 (1989) (right of access to one's property is defined as right to reasonable ingress and egress to the property.) In addition, she cites evidence of damage to her house and person from snowplows throwing debris. Thus, she argues that she proved that the total, continuous and unrelenting effect of the impact of the highway on her property deprived her of the beneficial use and enjoyment of her property such that she proved a *de facto* taking.

■ We acknowledge that Harrington's allegations regarding the damage caused by snowplows throwing debris sound in trespass or negligence and are not properly the subject of an eminent domain action. To the extent, however, that the trial court accepted her evidence that DOT's actions in 1998 changed the grade of the highway in such a way as to alter the whole profile of the road, resulting in both the frequent flooding of her property and cars frequently traveling within five feet of her home, we conclude that her allegations fell within the Code.

## III

Finally, DOT maintains that the trial court abused its discretion by making findings other than those relating to whether there was a change of grade. In addition, it alleges that that the trial court erred in basing its decision on findings of fact not supported by evidence of record.

Specifically, DOT emphasizes the trial court's findings that water entered Harrington's home and that DOT created a 12.5 to 13% slope on her driveway. DOT asserts that the uncontested evidence is to the contrary. It further notes that Har-

rington testified that the water did not enter her house. In addition, DOT emphasizes the finding that the resurfacing project caused the highway to be raised 4.5 inches. It notes its engineer's testimony that there was only a 2.5 inch uniform raising of the road.

Harrington responds that even if the record does not support the rise of the highway by 4.5 inches, it does support a rise of 2.5 inches. She further notes her testimony that DOT's 1998 project lowered or flattened her driveway and removed a lip that previously had prevented water runoff intrusion. (N.T. 68–69; R.R. 68a–69a.) Finally, she maintains that the record supports a finding that the 1998 project effected a substantial impairment of access to her property and that there was a change of grade of both the road and the entrance to her driveway.

We note that the parties do not dispute the inaccuracy of the trial court's finding regarding the 4.5-inch raising of the highway. What remains in dispute are issues relating to the slope. In any event, Harrington maintains that although the slope of the road from its center to the edge of the shoulder may have remained the same after the 1998 work, the slope in absolute terms from the center of the highway to her front door and garage door increased. She notes that the resurfaced road is at least 2.5 inches higher in relation to the house than it was before the 1998 project, which is especially relevant given the fact that the house is only 4.5 feet below the shoulder. In addition, she notes that the new curbing installed in 1998 sits at least 4.5 feet above the level of the garage door at a distance of only 10 feet.

■ We conclude that, if the trial court made any extraneous findings, it was harmless error. To reiterate, we conclude that the trial court did not err in determining that DOT's actions as a whole with regard to the change of grade of the highway and the permanent interference with access substantially deprived Harrington of the use and enjoyment of her property.

Accordingly, for the reasons stated above, we affirm the trial court's order.

### ORDER

AND NOW, this 21st day of February, 2002, the March 24, 2000 order of the Court of Common Pleas of Chester County is hereby AFFIRMED.

FLAHERTY, Senior Judge, Dissenting.

Because Elizabeth Harrington (Harrington) failed to meet her burden of proving that the Department of Transportation (DOT) changed the grade of U.S. Route 322 in accordance with *Daw v. Department of Transportation,* 768 A.2d 1207 (Pa. Cmwlth.2001), and also failed to prove that DOT caused permanent interference with a road or highway, I respectfully dissent.

In accordance with Section 612 of the Eminent Domain Code (Code), an abutting landowner may recover consequential damages resulting from only three causes: "(1) change of grade of a road or highway; (2) permanent interference with access to a road or highway; and (3) injury to surface support." [1] *Daw,* 768 A.2d at 1210.

In first addressing the change of grade issue, a landowner, such as Harrington, who seeks consequential damages based on a change in grade, must establish both that there was a change in grade and that the change caused damages to the landowner's

---

1. Section 612 of the Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–612.

property. In *Daw*, the landowner alleged that by resurfacing a road, which entailed the placement of a one-inch thick layer of asphalt over the existing road, DOT changed the grade of the road. This court disagreed stating that "the one-inch thick uniform resurfacing of the Road and berm in need of repair does not constitute a change of grade under Section 612 of the Code." *Id.*, 768 A.2d at 1211.

In this case, DOT similarly uniformly resurfaced Route 322, as part of its normal maintenance. Although in this case DOT milled off 1 inch of Route 322 before resurfacing it, DOT nonetheless uniformly resurfaced the road as it did in *Daw*. Although Harrington argues that the slope from the center of the road to her front door and garage has increased, such an inquiry is not relevant. Rather, we are concerned with whether the grade of the road itself changed and as the Majority acknowledges and Harrington concedes, the slope of the road from its center to the shoulder remained the same. (Majority opinion at p. 673, Harrington brief at p. 10.) Moreover, Harrington produced no evidence that the grade of the road had changed. Although she testified that the height of the road changed after the resurfacing, as was the case in *Daw*, the only evidenced produced as to the grade of the road was presented by DOT. The testimony of DOT's engineer revealed that there was no change in the grade of the road and that the existing slope of the road was maintained.

I also disagree with the majority's conclusion that DOT's actions resulted in permanent interference with access to a road or highway. The right of access is defined as the right of reasonable ingress and egress. *Department of Transportation v. Richards*, 124 Pa.Cmwlth. 432, 556 A.2d 510, 513 n. 7 (1989). Here, Harrington alleged that when DOT resurfaced Route 322, it paved the berm, which has interfered with reasonable and safe access to her home. Specifically, once DOT paved the gravel berm, cars more frequently travel on the shoulder, which is located five feet from her front door. While this may be true, such does not amount to a substantial deprivation of reasonable ingress and egress. DOT has not impaired Harrington's access to her home.

In accordance with the above, because Harrington failed to prove a change in grade and also failed to prove permanent interference with access to a road or highway, Harrington has failed to make a case for consequential damages and I would reverse the order of the trial court.