**The BAPTIST HOME OF PHILADEL-PHIA, now known as Deer Meadows Retirement Community, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2006.

Decided Nov. 9, 2006.

Donald R. Reavey, Harrisburg, for petitioner.

Cynthia White Williams, Asst. Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The Baptist Home of Philadelphia[1] petitions for review of a final order of the Department of Public Welfare, Bureau of Hearings and Appeals, dismissing its appeal of the reimbursement amount allowed by the Department for services rendered to persons at Baptist Home enrolled in Medical Assistance, an amount Baptist

---

1. Baptist Home is now known as Deer Meadows Retirement Community.

Home contends is inadequate. The appeal of Baptist Home came to the Bureau on transfer from the Board of Claims. The Department adopted the recommendation of the Bureau's administrative law judge (ALJ) that the Department should not accept jurisdiction over the transfer because Baptist Home had not satisfied the Bureau's deadline for such appeals. The appeal did, however, satisfy the Board of Claims deadline for such appeals, and at the time Baptist Home filed its appeal the Board of Claims had been established as an appropriate forum for such appeals. We conclude that as a matter of applicable statutory law, the Bureau was required to dispose of Baptist Home's appeal in accordance with the statute of limitations set forth in the Board of Claims Act. Accordingly, we remand the matter for a hearing on the merits.

Baptist Home is a long-term care nursing facility that provides services to those enrolled in Pennsylvania's Medical Assistance Program.[2] The Department is the Commonwealth agency charged with administration of the Medical Assistance program, which includes, *inter alia,* contracting with health care providers to provide services to those enrolled in Medical Assistance. Where a dispute arises between a provider and the Department over the amount to be paid a provider, the Department's Bureau of Hearings and Appeals is authorized to conduct hearings to resolve such disputes.

The Department audited Baptist Home's expenses for the fiscal year ending June 30, 2001, thereby establishing the amount that the Department believed was owed for that year. On March 5, 2003, the Department mailed this audit report to Baptist Home along with a transmittal letter of same date. The letter advised Baptist Home that it could appeal the Department's findings within 30 days by filing a written appeal with the Bureau along with a copy to the Department's Division of Nursing Home Rates. Reproduced Record at 65a (R.R. ——).

On May 9, 2003, Baptist Home filed a breach of contract claim with the Board of Claims, asserting that the Department's audit report contained errors that resulted in an erroneous calculation of the amount owed to Baptist Home. One week later, on May 15, 2003, this Court issued its decision in *Department of Public Welfare v. Presbyterian Medical Center of Oakmont,* 826 A.2d 34 (Pa.Cmwlth.2003) (*Oakmont I* ), holding that Medical Assistance reimbursement disputes between a nursing facility and the Department should be heard by the Bureau, not by the Board of Claims. On June 22, 2005, the Pennsylvania Supreme Court affirmed *Oakmont I,* albeit on different grounds. *Department of Public Welfare v. Presbyterian Medical Center of Oakmont,* 583 Pa. 336, 877 A.2d 419 (2005) (*Oakmont II* ). As a result of the ruling in *Oakmont II,* the Board of Claims entered an order on August 29, 2005, transferring the matter of Baptist Home's claim to the Bureau for disposition.

By letter of September 6, 2005, the Bureau acknowledged receipt of Baptist Home's claim from the Board of Claims and requested that Baptist Home inform the Bureau within 30 days as to whether it had also filed an appeal with the Bureau. Counsel for Baptist Home responded on September 29, 2005, that it had not. On

**2.** The Pennsylvania Medical Assistance Program is "a state plan for funding the provision of medical care and services to individuals in need of government aid, conducted with the assistance of federal funding and subject to extensive federal regulation." *Department of Public Welfare v. Presbyterian Medical Center of Oakmont,* 583 Pa. 336, 338, 877 A.2d 419, 421 (2005).

October 11, 2005, the Bureau issued a rule to show cause why the transferred claim should not be dismissed as untimely filed.

The ALJ did not conduct an evidentiary hearing on the rule to show cause but based his decision upon the record transferred from the Board of Claims and the parties' responses to the rule to show cause. The ALJ found that Baptist Home's claim was filed within the six-month statute of limitations for complaints filed with the Board of Claims.[3] However, it was not filed within the statutory 30–day deadline for an appeal filed with the Bureau. The ALJ rejected Baptist Home's argument that the notice accompanying the audit report was defective under a Final Practice Standing Order (Standing Order) governing such appeals and, thus, the Bureau's 30–day deadline had not yet started to run. Concluding that the Bureau, as the transferee tribunal, lacked subject matter jurisdiction, the ALJ recommended that the Bureau dismiss Baptist Home's appeal as untimely filed. The Bureau did so, dismissing the appeal of Baptist Home on December 29, 2005. Baptist Home now petitions this Court to review the Bureau's order.

Before this Court,[4] Baptist Home argues that the Bureau erred. It contends that the Bureau must take jurisdiction because the Department failed to comply with the notice requirements of its own established rules of practice for Medical Assistance hearings and Chapter 11 of the Public Welfare Code. Because of the defective notice, Baptist Home contends that the time period for filing an appeal never began to run.[5] We agree with Baptist Home that the Bureau has subject matter jurisdiction over its appeal and that the Bureau committed legal error in holding otherwise. However, we analyze the jurisdictional issue differently. We conclude that upon transfer of Baptist Home's appeal, the Bureau was required to apply the six-month statute of limitations in the Board of Claims Act because the appeal was filed on May 9, 2003, before this Court's decision in *Oakmont I* and before the effective date of the statutory provision that divested the Board of Claims of jurisdiction over Baptist Home's claim.

Jurisdiction over Medical Assistance provider reimbursement disputes has been

3. At the time Baptist Home filed its claim, the statute commonly called the Board of Claims Act stated, in relevant part, as follows:
   The board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued.
   Section 6 of the Act of May 20, 1937, P.L. 728, formerly 72 P.S. § 4651–6. As discussed more fully later in this opinion, the Board of Claims Act was repealed by the Act of December 3, 2002, P.L. 1147, and reenacted as part of Title 62 of Pennsylvania's Consolidated Statutes, effective June 28, 2003. Under the current version, an aggrieved contractor must file a claim with the contracting officer of the Commonwealth within six months of the date it accrues. 62 Pa.C.S. § 1712.1(b). Within 15 days of the mailing date of a final determination denying a claim by the contracting

officer, or within 135 days of filing a claim, whichever occurs first, the contractor may file a statement of claim with the Board of Claims. 62 Pa.C.S. § 1712.1(e).

4. Our standard of review of a decision by the Department is limited to a determination of whether the adjudication was made in accordance with the law, whether any constitutional rights were violated, and whether the findings of fact upon which the decision is made are supported by substantial evidence of record. *Snyder Memorial Health Center v. Department of Public Welfare*, 898 A.2d 1227, 1229 (Pa.Cmwlth.2006).

5. Baptist Home also argues that because the Department gave notice by mail, the deadline for appealing a departmental action was not 30 days, as found by the Bureau. 67 Pa.C.S. § 1102(b)(1)(ii)(B).

a source of litigation over the past several years. The law in this area was not always so unsettled. From the mid–1970's through the early 1980's, the Department acceded to the Board of Claims' jurisdiction over reimbursement disputes with Medical Assistance providers, which the Department viewed as arising out of a contractual relationship. *Oakmont II*, 583 Pa. at 339, 877 A.2d at 421. By the late 1980's, however, the Department began to assert the view that provider reimbursement disputes implicated regulatory rather than contractual concerns. As such, it believed these disputes should be heard not by the Board of Claims but exclusively by the Department's Bureau of Hearings and Appeals. This Court repeatedly rejected this position of the Department. *See, e.g., Department of Public Welfare v. Shapiro*, 91 Pa.Cmwlth. 64, 496 A.2d 887 (1985); *Department of Public Welfare v. Divine Providence Hospital*, 101 Pa.Cmwlth. 248, 516 A.2d 82 (1986); *Department of Public Welfare v. Jerrytone*, 118 Pa.Cmwlth. 474, 545 A.2d 395 (1988).[6]

In 2002, the landscape began to change with this Court's decision in *Department of Public Welfare v. River Street Associates*, 798 A.2d 260 (Pa.Cmwlth.2002). In River Street, a group of providers filed a class action suit to challenge the rate of reimbursement established by the Department in its regulations. We held that a challenge to the rate levels established in a regulation had to be presented to the Department, not the Board of Claims, for resolution. On that basis, we distinguished River Street from our prior decisions in *Divine Providence* and *Shapiro*, which held that the Board of Claims had jurisdiction over provider reimbursement appeals.

The General Assembly clarified the jurisdictional issue by enacting Act 142–2002 on November 27, 2002. Act 142 was signed into law on December 3, 2002. Act 142 amended Titles 62 (Procurement) and 67 (Public Welfare) of the Pennsylvania Consolidated Statutes that effected two important changes in the law.

First, Section 12.2 of Act 142 added a new Subchapter C to the Procurement Code, 62 Pa.C.S. §§ 1721–1726. Subchapter C reconstituted the Board of Claims and, *inter alia*, divested it of jurisdiction over Medical Assistance provider reimbursement disputes. 62 Pa.C.S. § 1724(c).[7]

Second, Section 20.1 of Act 142 amended Title 67 by establishing the basic procedures to be followed in hearings before the Bureau on Medical Assistance program appeals.[8] In addition, the General Assembly

---

6. When litigation failed, the Department then attempted to adopt a regulation to forbid providers from bringing reimbursement disputes to the Board of Claims. The regulation was rejected by the Independent Regulatory Review Commission as contrary to the statute establishing the jurisdiction of the Board of Claims. 20 Pa. Bull. 3847–3849 (1990).

7. It provides, in pertinent part, as follows:
The board shall have no power and exercise no jurisdiction over claims for payment or damages to providers of medical assistance services arising out of the operation of the medical assistance program established by the act of June 13, 1967 (P.L. 31, No. 21), known as the Public Welfare Code.

62 Pa.C.S. § 1724(c).

8. Those amendments are codified at 67 Pa. C.S. §§ 1101–1106, including Section 1102 ("Hearings before the [B]ureau"), which the Bureau found barred Baptist Home's appeal. Section 1102 provides, in pertinent part, as follows:

(a) General Rule.—A provider that is aggrieved by a decision of the department regarding the program may request a hearing before the bureau in accordance with this chapter.
(b) Filing.—
(1) Except as provided in paragraph (2), a provider must file a request for a hearing

directed the Department to issue a standing order that would provide more specific procedures for appeals conducted by the Bureau.[9] The Bureau complied with this directive by publishing the Standing Order in the Pennsylvania Bulletin on June 28, 2003, with an effective date of July 1, 2003. 33 Pa. Bull. 3053 (June 28, 2003).

The implementation of these substantive changes to the Procurement Code and the Public Welfare Code was handled differently for each code.[10] Subchapter C of Title 62, which divested the Board of Claims of jurisdiction over Medical Assistance reimbursement appeals, became effective upon the "publication in the Pennsylvania Bulletin of the [S]tanding [O]rder under 67 Pa.C.S. § 1102(g)." Section 22(1)(iii) of Act 142.[11] This happened on June 28, 2003, when the Bureau published its Standing Order in the Pennsylvania Bulletin. By contrast, Section 20.1 of the Act, which established the new procedures for hearings conducted by the Bureau of Hearing and Appeals, became effective immediately upon Act 142 being signed into law, or on December 3, 2002.

Act 142 also addressed the question of transition to the new substantive law implemented in Sections 12.2 and 20.1. This transition was addressed in Section 21.2, which is the most important one for purposes of our analysis. It states:

> *Any claim filed and not finally resolved under* the act of May 20, 1937 (P.L. 728, No. 193), referred to as *the Board of Claims Act, prior to the effective date of this act, shall be disposed of in accordance with the Board of Claims Act.*

Section 21.2 became effective "upon publication in the Pennsylvania Bulletin of the standing order . . . ." Section 22 of Act 142, Act of December 3, 2002, P.L. 1147.

In *Oakmont II*, our Supreme Court explained that Section 21.2 was not intended to preserve jurisdiction in the Board of Claims for Medical Assistance provider disputes pending with the Board on the effective date of Subchapter C of Title 62, *i.e.*, the divestiture date.[12] Stated other-

---

with the bureau in accordance with all of the following:
  (i) The request must be in writing.
  (ii) The request must be filed with the bureau:
  (A) within 30 days of the date of the notice of the departmental action; or
  (B) if notice was given by mail, within 33 days of the date of the notice of the departmental action.
67 Pa.C.S. § 1102.

9. Section 1102(g) states:

  (g) Standing order.—By July 1, 2003, the bureau shall, after receiving comment by interested parties, issue a standing order establishing rules governing practice before the bureau. The standing order shall be published in the Pennsylvania Bulletin. The standing order of the bureau shall be effective until modified by regulation.
  67 Pa.C.S. § 1102(g). The regulation referenced in Section 1102(g) was to be adopted by July 1, 2004, thereby replacing the standing order. 67 Pa.C.S. § 1106(a). To date, the Bureau has not adopted a regulation.

10. Section 22 of Act 142 states:

  Section 22. This act shall take effect as follows:
  (1) The following provisions shall take effect upon publication in the Pennsylvania Bulletin of the standing order under 67 Pa.C.S. § 1102(g):
  (i) The amendment of 62 Pa.C.S. § 1701.
  (ii) The repeal of 62 Pa.C.S. Ch. 17 Subch C.
  (iii) The addition of 62 Pa.C.S. Ch. 17 Subch. C.
  (iv) Section 21(a)(2) of this act.
  (v) Sections 21.1 and 21.2 of this act.
  (2) The remainder of this act shall take effect immediately.

11. Notably, Baptist Home filed its appeal before Subchapter C of Title 62 became effective and the Board of Claims was divested of jurisdiction.

12. *Oakmont II* is a statutory construction case. The Department was required by federal regulation to give all persons participating in the Medical Assistance Program, whether

wise, Section 21.2 did not extend the Board of Claims' jurisdiction beyond the effective date of Subchapter C for those claims filed before the effective date. Nevertheless, Section 21.2 must mean something, and we are required to give effect to all provisions of a statute. 1 Pa.C.S. § 1921(a). The plain reading of Section 21.2 means that all claims filed before the effective date of Subchapter C of Title 62 must be "disposed of in accordance with the Board of Claims Act." Since this disposition cannot be made by the Board of Claims, then it must be by the Bureau.[13]

Only after Baptist Home initiated its claim on May 9, 2003, was it established that jurisdiction lay in the Bureau. The Board of Claims properly transferred the matter. However, because Baptist Home's claim was filed and not finally resolved prior to the effective date of Subchapter C of Title 62, it was required to be disposed of in accordance with the Board of Claims Act. Relevant here is the six-month statute of limitations in the Board of Claims Act. Section 6 of the Board of Claims Act, 72 P.S. § 4651-6, repealed by Act 142. Applying that limitations period, Baptist Home had six months from the date of the disputed audit report, March 5, 2003, within which to file its claim. Be-

cause it filed its statement of claim with the Board of Claims on May 9, 2003, well within the six-month limitations period, the Bureau erred by dismissing Baptist Home's claim for lack of subject matter jurisdiction.

The Department contends that this Court's holding in *Davis v. Commonwealth*, 660 A.2d 157 (Pa.Cmwlth.1995) compels a different result. The Department's reliance on *Davis* is misplaced.

In *Davis*, two former Commonwealth employees sued the Commonwealth and the Philadelphia County Court of Common Pleas in federal district court asserting a violation of their civil rights and a breach of contract. The contract actions were dismissed from the federal case without prejudice to plaintiffs' right to pursue them in the appropriate state forum. Plaintiffs then filed complaints with the Board of Claims, which the Board dismissed because neither claim was filed within six months from the date the cause of action accrued. On appeal, this Court rejected plaintiffs' argument that a lack of knowledge of the proper forum in which to file a complaint should toll the statute of limitations. We also explained that Sec-

---

as clients or as providers, a hearing when challenging a decision of the Department. *See* 42 C.F.R. § 447.253(e); *Oakmont II*, 583 Pa. at 347–348, 877 A.2d at 427. The Supreme Court reasoned that the hearing before the Bureau mandated by federal regulation was inconsistent with the legislature's directive that jurisdiction in the Board of Claims was exclusive. Stated otherwise, there could only be one agency to conduct such appeals, the Bureau of Hearings and Appeals.

13. Our interpretation of the legislature's intent is in accord with the Pennsylvania Supreme Court's decision in *Oakmont II*. In *Oakmont II*, the Court held, definitively, that the Board of Claims lacked jurisdiction over Medical Assistance reimbursement claims,

even if such claims were filed prior to the prospectively-applicable amendment to the Board of Claims Act under Act 142 depriving the Board of jurisdiction. The Court noted that the prescription in Section 21.2 of Act 142, that pending claims are to be decided "in accordance with the Board of Claims Act," did not preserve the Board's jurisdiction over then-pending claims. What the *Oakmont II* majority left unanswered, however, is the meaning of Section 21.2. Today we answer that question as anticipated by Justice Eakin in his dissenting opinion: "It is possible the General Assembly intended this to mean [the Bureau] should settle all claims in accordance with the [Board of Claims] Act." *Oakmont II*, 583 Pa. at 357, 877 A.2d at 432 (Eakin, J., dissenting).

tion 5103 of the Judicial Code, 42 Pa.C.S. § 5103,[14] pertaining to "transfer of erroneously filed matters," did not operate to save plaintiffs' claim. As we explained in *Davis*, "[a]lthough these provisions act to keep alive an action filed in the wrong tribunal, they do not act to extend the filing date in the tribunal to which the action is transferred ... Once the case is transferred, for statute of limitations purposes, it is treated as if filed in the proper tribunal on the date that it was filed in the first tribunal." *Davis*, 660 A.2d at 162.

*Davis* is inapposite here for two reasons. First, the plaintiffs in Davis acted in ignorance (or blatant disregard) of the law governing contract claims against the Commonwealth. In contrast, Baptist Home filed its claim with the Board of Claims prior to the establishment of the legal principle, by statute or by the appellate courts in *Oakmont*, that these claims had to be heard exclusively by the Bureau. Second, Section 5103 of the Judicial Code applies only to transfers of erroneously filed matters *from* "a court or magisterial district" *to* "the proper tribunal," or *from* a "tribunal" *to* "the proper court or magisterial district." 42 Pa.C.S. § 5103(a). The Department has cited no authority for its suggestion that Section 5103 governs transfers from one administrative tribunal to another.

When Baptist Home filed its appeal in the Board of Claims, it had not been held by any court of law that the Board of Claims lacked jurisdiction. To the contrary, for over twenty-five years, the Board of Claims decided these provider disputes. One cannot be held liable for ignorance of a law that has not yet been established. In this respect, *Davis* has no precedential value. More importantly, this case is different from *Davis* because of Section 21.2 of Act 142. This provision represents a clear expression of the General Assembly that appeals, such as that of Baptist Home, get a hearing on the merits if timely filed in the Board of Claims prior to the effective date of Subchapter C of Title 62.

Accordingly, we reverse the Bureau's order and remand this matter for further proceedings before the Bureau on the merits of Baptist Home's appeal.

Judge SMITH–RIBNER concurs in the result only.

**ORDER**

AND NOW, this 9th day of November, 2006, the order of the Department of Public Welfare dated December 29, 2005, in the above-captioned matter is REVERSED and the matter is REMANDED to the Department of Public Welfare, Bureau of Hearings and Appeals, for further proceedings on the merits of Petitioner's administrative appeal.

14. Section 5103(a) of the Judicial Code provides, in relevant part:

(a) General rule.—If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth.

42 Pa.C.S. § 5103(a).